Richardson, J.,
delivered the opinion of the court:
This is an action for work and labor, wlierein the claimant seeks to recover payment for one-quarter part more in numbers of day’s work than were allowed to him on settlement, on the ground that his day’s works wore reckoned by calendar days, in each of Avhieli he labored ten hours, whereas he insists that he is entitled to be paid for every eight hours, as a day’s work, the same wages allowed to him for each calendar day in which he worked ton hours, under the provision of the act of Congress passed June 25,1868 (15 Stat. L., 77), declaring that “eight hours shall constitute a day’s work for all laborers, workmen, and mechanics now employed, or who may hereafter be employed, by or on behalf of the Government of the United States.” (Now Bev. Stat., § 3738.)
At the outset the claimant is met with the objection on the part of the defendants that he was not in their employment, but was in the service of Albert Ordway, a contractor, who had agreed to furnish all the labor, of ■which that of the claimant formed a part, and to whom they have paid the agreed price, and therefore there is no privity of contract between the parties to this action, and the defendants are under no obligations to the claimant.
In the Act of March 3,1871, chapter 113, section 2 (16 Stat. L., 494), making appropriations for legislative, executive, andjudicial expenses, it was enacted “ that the sum of five hundred thousand dollars be, and hereby is, appropriated out of any moneys in the Treasury not otherwise appropriated, for the construction, under the direction of the Secretary of State, on the southerly portion of the premises now occupied by the War and Navy Departments, a building which will form the south wing of a building that when completed will be similar in the ground plan and dimension to the Treasury building, and provide accommodations for the State, War, and Navy Departments. * * * *”
On the 16th of November, 1871, the Secretary of State, through *35 A. B. Mullet, Supervising Architect, in behalf of the United States, entered into a written contract, under seal, with Albert Ordway, by which said Ordway covenanted to furnish all the granite for the exterior walls of the superstructure of said building, the walls of the court-yard excepted, in the manner and at the prices therein agreed upon to be paid by the defendants, the terms of which are not material in this case. In addition to furnishing the stone, it was therein provided thatu the party of the second part [said Ordway] hereby agrees to furnish all the labor, tools, and materials necessary to cut, dress, and box at the quarry or quarries all the granite aforesaid in such manner as may be directed by the party of the first part [the defendants] • * * * and the party of the first part, acting for and in behalf of the Dnited States, doth covenant and agree to pay, or cause to be paid, unto the said party of the second part, or to his heirs, executors, administrators, or assigns, in lawful money of the United States, the full cost of the said labor, tools, * * * and materials, and also the insurance on the granite, increased by fifteen (15) per centum of such cost; and for the purpose of determining the amount thereof, the party of the first part shall employ such agent or agents as he may deem necessary, who shall take an account of such cost and expense, and shall for that purpose be afforded all necessary and proper facilities by the said party of the second part.”
Ordway entered upon the performance of his contract, and furnished all the labor, tools, and materials for dressing and boxing the granite during the whole period of the claimant’s employment, and was paid therefor by the defendants in monthly payments, upon vouchers made out each month for the cost of labor, &c., with fifteen per cent, added thereto, according to his terms of the contract.
Among the numerous laborers employed was the claimant, who worked from March 25, 1872, until October, 1873, except the month of September, 1872, eighteen months in all. He commenced without an express or special contract, and at the end of each and every month for the whole eighteen months, he, with all the other laborers, signed a receipt, in which he and they acknowledged “to have received from Albert Ordway the amounts set opposite them names, respectively, in full payment for our [their] services for the time specified,” and the number of day’s work for the months, the rate of wages, and the full *36 amount thereof were set opposite each name. These receipts were returned monthly to the Treasury Department by Mr. Ordway with his hill, and. made part of his voucher, and he was paid therefor by the defendants, with fifteen per cent, added, as before stated, and the claimant was paid according to his receipt by Ordway.
In the midtifarions transactions of business, the hiring of one person to furnish the labor of others, in which the latter are the servants and employes of the person who agrees to furnish the labor, and who alone is responsible to them for their wages, with no privity of - contract between them and the party for whose tdtimate use the work is done, is of such daily occurrence as to be a familiar matter of common knowledge.
A clearer case of that kind could not be presented than is shown by the written documents set forth in the findings, wherein it was expressly agreed that Ordway should furnish the labor, and the defendants shoxdd pay Mm the cost thereof, with fifteen.per cent, added; and from which it appears that the claimant was one of the workmen who performed the labor, that he received from Ordway his pay monthly during eighteen months, and that he regularly each month gave a receipt acknowledging that he had received from said Ordway the wages specifically mentioned in frill payment for his services for the time specified.
The claimant’s counsel endeavor, in their argument, to overcome the force of the written contract between the defendants and Ordway and the legal effect of an employment of the claimant by him on three grounds:
1. That the contract between the defendants and Ordway, or so much thereof as relates to furnishing labor, was void because it did not conform to the terms of the public notice inviting proposals, in that, the clause by which Ordway was to furnish labor and the United States were to pay him therefor with a percentage added was not founded on anything set forth in the advertisement, as they urge was necessary under the act of March 2, 1861, § 10 (12 Stat. L., 220, now Devised Statutes, § 3709), requiring all purchases and contracts for supplies, &c., in any of the departments to be made by advertising, except in certain cases therein stated.
To this proposition it is a sufficient answer, that at most the contract was only voidable, and if the defendants might have *37 .avoided it in whole or in part for any reason, they never availed themselves of their right, and the contract was never repudiated, but was performed and fully executed on both sides for the period of the claimant’s employment. What has been done with the concurrence and to the satisfaction of both parties to a voidable contract cannot be set aside and undone by others not parties thereto.
2. That the contract was absolutely void, because, as they allege, it ivas made with the intention and for the purpose of evading the “ eiglit-hour law,” and so was a fraud upon the claimant and all other laborers, workmen, and mechanics employed by Ordway in its execution. .
What was the motive of the honorable Secretary of State in entering into a contract in this form is not found as a fact, but if we were called upon to infer it from the transactions set forth, we might think that he desired to avoid liability on the part of the United States to a great number' of workmen separately, preferring to consolidate the liability to one person, or that he wished to have, to.a greater or less extent, the personal supervision of an experienced contractor, in his own interest, over the employes, or the responsibility of one contractor and his bondsmen for the acts of all the laborers, or that, deeming it his duty to advance the work intrusted to Ms judgment and discretion to the utmost extent that a judicious and economical expenditure of the money appropriated would effect, he did contract with Ordway to furnish the labor, because, among other advantages to be gained thereby, he believed that Ordway, as a contractor, coidd make better terms and employ laborers at a less rate than the defendants could directly through their officers and employés, and in either case we see nothing illegal or improper in such motives or the action induced thereby. To evade an act of Congress by the legal execution of a right in such a ■form as not to come within the terms of the act is by no means necessarily a violation of it. But with the motives of the Secretary of State or any other parties to the contract we have nothing to do. They are wholly immaterial in this case.
3. That whether the contract was void of not, the officers of the United States so acted in the transactions as to make the defendants principals, with Ordway as their agent, and so they are liable to the claimant for payment for his services as though he had been directly employed by or for them.
*38 It is true that the findings show that the defendants did employ, directly, a superintendent to look after the work, see that the laborers were not paid more than market rates, and to certify to the pay-rolls, and otherwise to supervise the work; and also a clerk, who kept a ledger account of the time of the workmen, made out the pay-rolls, and saw that they -were properly signed. But all this was in pursuance of their interest under the contract with Ordway, and of its express provisions that they might employ such agent or agents as they might deem necessary, to take an account of the cost and expense j and for that purpose they were to be afforded all necessary and proper facilities by said Ordway. And it is true that Ordway conformed to the wishes, or directions, if they may be so called, of the defendants’- Supervising Architect in the employment of men, in the hours of labor required of them, and their compensations, and followed in other matters, to some extent, if not entirely, the directions of the government superintendent. All this is entirely consistent with their contract, and does not make them principals in the employment of the claimant and his fellow-workmen.
The interest of the United States and that of Ordway were directly antagonistic in respect to the price to be paid laborers, because the more he paid the greater his commission, and as the defendants were to pay him for both, they would be doubly the losers by too high wages; and it was natural, proper, and judicious for their officers to take all means within their power to see that they were not made to pay more than the market rates of wages, and to exercise their influence and authority upon Ord-way to keep him within reasonable bounds in incurring expenses and the cost of labor which they were finally to pay him for. Such an interference was not sufficient to make the defendants principals, liable directly to the claimant.
But even if the defendants were the principals, directly liable to the claimant, we are of opinion that he has no cause of action. In Martin v. The United States (10 C. Cls. R.., 270), we held that the “eight-hour law” does not regulate the compensation to be-paid to employés, but leaves that to be determined by the contract of the parties or the rules of law, and that it does not place laborers and mechanics under any disability in making contracts, nor prohibit them from working more than eight hours each calendar day, nor in any way prevent them from waiving its *39 intended beneficial prolusions, and our opinion was sustained by tlie Supreme Court on appeal, and tlie judgment which we entered against our opinion, jproforma, in favor of the claimant for the purpose of an appeal, which could not otherwise have been availed of by reason of the sum in controversy being less than $3,000, was reversed. (United States v. Martin, 94 U. S. R., 400, and 12 C. Cls. R., 87.)
The Supreme Court held, substantially as we did, that the act was a direction by Congress to the officers and agents of the United States, establishing the principles to be observed in the labor of those engaged in its services; and that it prescribes the length of time which should amount to a day’s work when no special agreement is made upon the subject.
In this case the claimant was employed and set at work without any express contract as to either the hours of labor or the amount of his wages. This created an implied contract, as strong as any express contract can be, that he should be paid on a quantum meruit for what his services should be worth. And it appears by the findings that his services were worth, measured by the wages of laborers employed in like manner on like work in the same locality, precisely what he received for ten hours’ work per day. If, in the computation, his time should be reduced to eight hours for a day’s work, then his compensation should be reduced in the same proportion in order to pay him on a quantum meruit, and the result would be the same as was reached in the settlement.
But the case is stronger against the claimant even than that, for at the first he began work at ten hours a day, and at the end of the first calendar month, in which he worked five and a half days, his wages were agreed upon in the strongest possible manner, by being put in writing and receipted for by him in full payment for his services during the period specified. And this he did month after month to the end of his term, giving eighteen receipts in all, in each of which the time of service by days, the rate of compensation per day, and the amount were distinctly specified, and he receipted therefor in full payment. Thus by his own agreements he is concluded.
There is but one other ground on which the claimant’s case can be sustained, even if the defendants are the principals, and that is, as practically put forth in the argument, that the “ eight-hour law” was intended to give, and by its very terms does operate *40 to give, to all laborers, workmen, and mechanics employed by or on behalf of the Government of the United States, who labor ten hours a day, twenty-five per cent, more wages than they agree to work for, when there is an express contract, or than them services are worth, as measured by like services between individuals in the same locality, when there is no express contract.
We know of no rule by which that intention or effect can be drawn from the language of the act or otherwise; and to adopt such a construction would be no more reasonable than it would be to hold that the act operates to give to laborers who work only six hours a day one-fourth less rate of wages than is agreed upon when there is a special contract, or than the services are worth when there is no special contract.
For these reasons we are of opinion that the claimant is not entitled to recover, but as it is understood that there are some two thousand cases on the docket of this court awaiting the final determination of the questions herein discussed, and the parties desire the opinion of the court of last resort thereon, we are disposed to do as we did in Martin’s case, enter judgment pro forma for the claimant, that the case may be taken to the Supreme Court on appeal, and the opinion of that tribunal may be had on all these questions, which affect so large a class of citizens, involve the construction of a statute which may apply to -so many employés of the government, and are material to the accounting-officers in the settlement of accounts under so many contracts made by public officers, that their final authoritative determination is a matter of public importance.
Judgment will therefore be entered in favor of the claimant for $244.37.