EichaedsON, J.,
delivered tlie opinion of tbe court:
On tbe 25th of June, 1808, when tbe eigbt-liour law was jiassed by Congress, tbe claimant was employed by tbe defendants as an engine-tender at tbeir navy-yard at Norfolk, Ya., and be continued in tbe same employment from tbat date until March 31, 1875, going on actual duty at eight o’clock a. m. every alternate day, and remaining until eight o’clock of tbe next day, thus performing actual duty four hours one calendar day and twenty hours tbe next, through tbe whole time, averaging twelve hours a day.
Tbe rates of pay of all employes at tlie navy-yard were determined- by a board of officers, detailed bj tbe commandant, in accordance with tbe rates paid by private establishments in tbe vicinity for similar services, subject to tbe approval of tbe Secretary of the Navy, as required by tbe Act July 16, 1862, chapter 181 (12 Stat. L., 587), which is as follows:
uBe it enacted, &e., That section eight of an act to further promote tbe efficiency of the Navy, approved December twenty-first, eighteen hundred and sixty-one, be amended so as to read as follows: That the hours of labor and the rate of wages 'of the employes in the navy-yards shall conform as nearly as is consistent with the public interest with those of private establishments in the immediate vicinity of the respective yards, to be determined by the commandants of the navy-yards, subject to the approval and revision of the Secretary of the Navy.”
The Eight-hour Law (Act 1868, ch. 72, 15 Stat. L., 77, now Rev. Stat., § 3738) provided that eight hours should constitute a day’s loorli for all laborers, workmen, and, mechanics noto employed, or who may be hereafter employed by or on behalf of the Government of the United States.” While this may be regarded as repealing so .much of the act of 1862, chapter 184, as required the hours of labor in the navy-yards to conform to those of private establishments in the immediate vicinity, it was not inconsistent with and did not affect that part of the act which required the rate of wages to conform to those of private establishments, and to be determined by the commandants, subject to the approval and revision of the Secretary of the Navy, and the public officers have continued to fix the rate of wages of employés at the navy-yards as provided by the act of 1862 up to the -present day. That act is wholly omitted from the Eevised Statutes, and therefore is still in *204 force according to section 5590, which repeals only “ all acts of Congress passed prior to said first day of December, one thousand eight hundred and seventy-three, any portion of which is embraced in any section of said revision,” unless it is brought vfithin that repealing clause, because it is an act amending a former act some portion of Avhich is embraced in the revission. It is not material, however, whether the act of 1862 is repealed by the Revised Statutes or not, as the judgment of the court on the merits of the present claim would be the same in either case. It is only referred to here in connection with the fact that the claimant’s wages were regularly fixed and as showing the manner in which they were determined.
This action is brought to recover the difference between the amount which the claimant has received and that which would have been due him if each eight hours during which he was on duty were taken as a day’s work and he were allowed therefor the same rate of wages that was allowed and paid to him for the days on which he was on duty twelve hours on an average, making a sum equal to one-half more than he received on settlement each month while in the defendants’employment after the 25th of June, 1868, when the eight-hour law was passed. (15 Stat. L., 77, now Rev. Stat., § 3733.)
We have heretofore decided two cases involving the construction of that act, cases which wore fully and ably argued by counsel and carefully considered by the court, and in each our opinion has been sustained by the Supreme Court on appeal. (Martin v. United States, 10 C. Cls. R., 276, and 94 U. S., 400; Driscoll v. United States, 13 id., 15, and 96 U. S. 421.) The principles laid down in those opinions are decisive against the present claim. This case cannot be distinguished from that of Martin’s in any essential particular. There are some differences of detail, but they are slight and unimportant in their relation to the questions of law involved.
Martin, like the present claimant, was in the employment of the defendants when the eight-hour law was passed; the former at the Naval Academy and the latter at a navy-yard. Martin and the other laborers at the same place were told that they must continue to work twelve hours a day, and that their wages would not be increased. The present claimant, although not told the same in the same way, was as clearly and distinctly informed of the fact, when, in five days after the passage of the *205 act, tlie pay-roll was made out and bis wages were entered thereon at the rate and amount which he was to receive, and when that information was subsequently repeated to him through eighty-one separate monthly pay-rolls, according to the terms of each one of which he received his pay without protest or objection. Martin signed the pay-rolls, giving receipts in full. The present claimant, in like manner, signed similar receipts on four pay-rolls, the first as early as December, 1869} his cross-mark was made to his name attached to many others, and some appear to have been signed by some person who wrote all the names of the employés, apparently for convenience and probably because many of them could not write. The material fact is that the claimant accepted the amounts which were allowed to him and made no protest or objection thereto. Receipts are only evidence of the facts therein set forth, and those facts may be proved by parol as well as by written evidence. The legal effect would have been the same had no receipts been given.
In Baird v. United States (96 U. S., 430) the Supreme Court held that where an unliquidated claim was audited b3 the aeaccounting officers of the Treasury Department, who allowed an amount less than was claimed, and that amount was received by the claimant without objection, it was a fall discharge, although no receipt in full was given; the Chief Justice saying, in the opinion delivered by him, that “the acceptance of the money afterwards, without objection, was equivalent to an acceptance of the payment in satisfaction.”
In the present case also, as in Martin’s, the claimant received as much as was paid for similar services in private establishments in the immediate vicinity, and as much as his services were reasonably worth.
This case and all the other cases -which have been before us for adjudication, presenting claims for extra compensation under the eight-hour law, are based upon a fundamental error in the construction of that statute, interpreting its intent and operation as establishing an inflexible rule for the payment of wages to employés, and giving them the right to the same rate of compensation for each eight hours’labor that they would otherwise be entitled to for a calendar day’s work of more hours actual service, and that, too, when the rate claimed would be more than the current rate paid for like service in private es *206 tablishments, more than such services were reasonably worth as between individuals, and more even than' the claimants had accepted and received without objection-.
In Martinis Case (94 U. S., 400) the Supreme Court, after quoting the language of the act, say:
“ This was a direction by Congress to the officers and agents of the United States, establishing the principle to be observed in the labor of those engaged in its service. It prescribed the length of time which should amount to a day’s work when no special agreement was made upon the subject. There are several things which the act does not regulate which it may be worth while to notice. First. It does not establish the price to bo paid for a day’s work. * * * Second. The statute does not provide that the employer and the laborer may not agree with each other as to what time shall constitute a day’s work. * * * We regard the statute chiefly as in the nature of a direction from a principal to his agent, that eight hours is deemed to be a proper length of time for a day’s labor, and that his contract shall be based upon that theory. It is a matter between the principal and his agent, in which a third party has no interest.”
The Supreme Court of Connecticut, in construing a similar statute of that State, held that under its provisions an employé might stop work for the day at the end of eight hours, but if he worked longer, in the absence of any special request or special contract, the extra work would be regarded as done voluntarily, without any legal right to compensation. (Luske v. Hotchkiss, 37 Conn., 219).
Congress has in some few instances legislated directly in reference to the rate of compensation to be paid, to certain em-ployés in some of the government establishments, as by the Act December 21,1861, ch. 1, § 8 (12 Stat. L., 330), and the similar Act July 16,1862 (12 Stat. L., 587), which we have before quoted in full, and by the more recent Act February 16, 1877, ch. 58 (19 Stat. L., 231), providing that “ the Public Printer shall pay no greater price for composition than fifty cents per thousand ems and forty cents per hour for time-work to printers and bookbinders but those provisions were made in order that thewages of such employés should conform as nearly as practicable to those paid by individuals in other establishments, and to pre *207 vent a disturbance of the prevailing rates in tlie immediate vicinity.
The eight-liour law resulted from an entirely different object, and was passed in deference to a sentiment of philanthropy which prevails, and which at times is urged with great, earnestness by its supporters, that eight hours’labor is enough to be performed in any one day, and that the condition of laboring people would be greatly improved and elevated if their physical work were restricted to that extent and they were afforded more time to devote to mental culture and improvement, leaving the rate of wages to be determined by the inexorable laws of business, according to which the price is regulated by the supply and demand of labor and its products and the profits thereof to the employers — laws the operation of which legislation may temporarily disturb, but which it cannot permanently and generally control without inj ury, if not disaster, to those who are employed as well as to.the employers.
It follows from these views that the claimant’s petition must be dismissed.
At the same time the following opinion was delivered in Miller’s case:
Bichardson, J.,
delivered the opinion of the court:
This case is like the preceding (that of Averill), and raises no question of law not therein fully discussed. The claimant, like Avei’ill, was employed at the Norfolk navy-yard when the eight-hour law was passed, and- continued in such employment until this action was brought, eighty-two months in all, working most of the time twelve hours a day on the average. His rate of compensation was changed more frequently than was that of Averill, and at one period he worked only eight hours a day. Beginning at $3 a day, the rate was reduced to $2.75 October 9, 1868, raised to $3 February 1, 1871, raised again to $3.25 October 1, 1873, and reduced to $2.76 July 1, 1875. On the 1st' of November, 1868, his hours of labor were reduced to eight each day, without any reduction in his wages, and on the 1st of September, 1870, they were increased to twelve without increase of compensation. Through all these changes the complainant received his pay, as fixed by the officers of the *208 yard and entered on the pay-rolls, at the end of each of the eighty-two months of ser idee, without protest or objection, and it was all that his services were reasonably worth.
With all these changes, acquiesced in by the claimant without protest or objection, proof could hardly be more conclusive, even by a receipt in full or a discharge under seal, than the facts present of payment and satisfaction according to the understanding and agreement of both parties at the time. If there was any express contract, it was that which is shown by the pay-rolls, and its terms have been fully complied with by the defendants, payments made in accordance therewith, and no breach thereof shown. If there was no express contract, the claimant was entitled to receive whatever his services were reasonably worth, and that has been paid to him. On either ground there is no cause of action, and the petition must be dismissed.