Weldon, J.,
delivered the opinion of the court:
In this case the claimant alleges that she is the testamentary executrix of the estate of William Sullivan, deceased, late a citizen of the United States and a resident of the State of Louisiana, and as such prosecutes this case upon the following alleged facts:
“ That on or about the 5th day of October, 1880, the said William Sullivan was legally appointed as night watchman at the United States mint at New Orleans, La., at a compensation of two dollars and twenty-five cents per day, and continued to serve as such until the 15th day of July, 1885; that during his term of service as aforesaid he was at divers times ordered and instructed by the superintendent then in charge of said mint, under the authority conferred upon him by law, to perform labor in excess of the eight hours’ daily work required by law, and which labor was performed by the said William Sullivan, viz, to the extent of four and three-fourths hours’ overtime dailv, making the total number of hours’ overtime rendered by him as watchman as aforesaid 8,33If hours, or 1,041^-f days.
“ That the pay of your petitioner’s testator as night watchman as aforesaid was, as stated, at the rate of $2.25 per diem; that pursuant to law and the regulations prescribed by the United States Treasury Department in relation to United States mints, the decedent was entitled to one-eighth of his daily pay for each and every hour’s work performed by him in excess of the eight hours’ daily labor fixed by law, but which has never been paid, either in whole or in part.
“Your petitioner therefore prays judgment against the United States in the sum of $2,342, being the sum due her as executrix aforesaid for 8,331§ hours or 1,041 days’ overtime performed by the said William Sullivan, as watchman as aforesaid, and for such other and further relief to which she may be entitled.”
The allegations of the petition are affected by the facts established by the evidence, which are in substance as herein stated. The following regulation of the Treasury Department was made on the 1st day of July, 1881, and was by the officers of the mint posted in a conspicuous place in the building, in order that *344 persons affected by its terms should have notice of its existence :
[Treasury Department, Document No. 155. Bureau of the Mint.]
“General instructions and regulations in relation to the transaction of business at the mints and assay offices of the United States. In force July 1,1881.
[Page 21. General regulations relative to mints and assay offices.]
“(3) The regular hours of labor for workmen and employés in the operative rooms shall be from 8 o’clock a. m. to 4 o’clock p. m. (3 o’clock p. m. on Saturdays), with one-half hour intermission at noon; but the superintendent may require extra labor in the operations of any department or of any officer, assistant, clerk, or employé whenever necessary on account of the business of the mint or assay office; but for all such overwork, or where more than eight hours’ labor is performed, extra pay shall be allowed at the rate of one-eighth of a day’s wages per hour, except of salaried officers, assistants, and clerks.”
It was the custom in said mint for the watchmen to work twelve hours. No express orders were given to that effect. No promise was made to claimant by any officer of the mint to pay for overtime above eight hours. The watchmen expected to get pay for time over eight hours by action of Congress. No account is kept of extra time, but the records show when each man came and when he went away.
The. accounts of the mint closed quarterly through the Auditor and Comptroller. The claimant did not ask for any change in the custom. The pay of night watchmen for regular time was $2.25; claimant has received pay on that basis. Men paid on rolls were allowed so many days irrespective of hours. None of the men employed as watchmen refused to work over eight hours. They had been in the habit of working that number of hours and no application was made for extra pay for extra hours.
Watchmen went to work in the evening at 5 o’clock, and it depended on the length of the night as to how long they staid on watch. Watchmen paid by the month were never promised pay for overtime, but expected it by action of Congress; men signed monthly rolls on receiving pay; a schedule of time for watchmen was posted in the mint, when they were to commence and when to quit.
*345 Superintendent Foote gave the watchmen to understand that they would be paid for extra time by action of the Government, in some way; but made no promise as superintendent. No change was made in the amount of pay or mode of payment during the time claimant acted as watchman. He did not refuse to work more than eight hours during said time. The following is the form of the receipt given by claimant:

Upon the foregoing state of facts is the claimant entitled to recover ? In the brief filed by counsel for claimant, section 3738, Revised Statutes, is cited as tending to establish a legal right on the pare of the claimant, to successfully maintain this action} but in the oral argument counsel concedes that said section is not applicable, and that no right can be successfully deduced from that provision of the statute. The court is forced to the same conclusion, founded upon an examination of the law and the exposition of it as given by this court in the case of Averill et al. v. The United States (14 C. Cls. R., 200). The court in that case, after referring to various statutes passed by Congress in reference to the rate of compensation to be paid certain employés in some of the Government establishments, said:
“ But those provisions were made in order that the wages of such employés should conform as nearly as practicable to those paid by individuals in other establishments, and to prevent a disturbance of the prevailing rates in the immediate vicinity.
“The eight-hour law resulted from an entirely different object, and was passed in deference to a sentiment of philanthropy which prevails, and which at times is urged with great earnestness by its supporters, that eight hours’ labor is enough to be performed in any one day, and that the condition of laboring people would be greatly improved and elevated if their physical work were restricted to that extent, * * * leaving the rate of wages to be determined by the inexorable laws *346 of business. * * *” (Driscoll v. United, States, 13 C. Cls. R., 15: S. C., 96 U. S. R., 421: Martin v. United States, 10 C. Cls. R., 276; S. C., 94 U. S. R., 400.)
• In the case of Liske v. Hotchkiss (20 Conn., 219) it was held, in giving construction to a statute of that State providing that eight hours should be deemed a lawful day’s work unless otherwise agreed by the parties, that—
“ The only effect of the statute, where a case falls within it, is to release the laborer from work and entitle him to his compensation for a day’s labor at the end of eight hours. If the laborer works more than eight hours in a day, unless by special request or by special agreement, he can not claim any ad-tional compensation for such additional work.”
It is insisted that the facts as stated entitled the claimant to recovery as upon a regulation of a department, or contract with the defendants, for all time served by him in excess of eight hours each day. The regulation upon which the claimant relies provides:
“ The regular hours of labor for workmen and employés in the operative room shall be from 8 o’clock a. m. to 4 p. 1114 * * * but the superintendent may require extra labor in the operations of any department or of any officer, assistant, clerk, or employé whenever necessary on account of the business of the mint or assay office; but for all such overwork, or where more than eight hours’ labor is performed, extra pay shall be allowed at the rate of one-eighth of a day’s wages per hour, except of salaried officers, assistants, and clerks.”
The terms of this regulation make it applicable “ in the operative room” to those persons whose duties require them to perform their labor in that room, and the latter portion of the regulation is intended to apply to the same class and kind of labor contemplated by the terms used in the first part of the regulation. That this regulation does not, and was not, intended to apply to watchmen is strengthened by the phraseology, “ whenever necessary on account of the business of the mint.” The duties of a watchman are continuous and unvarying — are not dependent upon the amount of business in the mint, which may be affected by a continuation of labor in the operative department beyond the period provided by the regulation. This leaves the claim of petitioner dependent upon the question whether there was an agreement upon the part of an authorized agent or legal representative of the United *347 States that he should be allowed compensation for the time employed beyond eight hours in each day. Section 3499, Revised Statutes, provides:
“ There shall be allowed to the assistants and clerks of the several mints such annual salaries as the Director of the Mint may, with the approbation of the Secretary of the Treasury, determine, and to the workmen employed therein such wages as may be customary and reasonable according to their respective stations and occupations, to be determined by the superintendent and approved by the Director of the Mint. The salaries provided for in this and the preceding section,' and the wages of workmen permanently engaged, shall be payable in monthly installments.”
The facts stated by the courts, as being established by the evidence, do not bring the case to the requirements of the statute. There was no contract or agreement on the part of the superintendent, approved by the Director of the Mint, to pay the claimant for the time in excess of eight hours. He expected to be paid, not as the result of any agreement, but as a gratuity of the Government aeting by and through the agency of Congress.
The employment of a watchman, who was expected to guard and protect the property of the defendants during the hours of darkness, could not hav^e contemplated a hiring on the theory that eight hours was to constitute a day’s labor, giving the right to the employé to quit at the end of eight hours from the commencement of his service.
In the absence of an undertaking upon the part of persons in authority to pay for time beyond eight hours we find no warrant in law to make the defendants responsible for such extra time.'
The claimant was paid, upon the basis of $2.25 for all the time served by him, without protest, and the fact that he was so paid is almost conclusive evidence, that neither party understood the agreement as it is how alleged by the contention in this proceeding.
It is the judgment of the court that the petition be dismissed.