Vogt vs. The City of Milwaukee.

Vogt, Appellant, vs. The City of Milwaukee, Respondent.

*March 24—April 12, 1898.*

*City ordinance fixing hours of labor: Extra pay for extra hours: Estoppel.*

1. The effect of a city ordinance which fixes eight hours as a full day's work for city employees is to give such employees an option either to refuse to work over hours, or to demand extra pay for work over that time; but in order to entitle them to recover extra pay for work done over time there must have been a previous agreement therefor.

2. Where a city ordinance fixing eight hours as a full day's work for city employees provided that no city official should employ workmen overtime unless upon the recommendation and order of the health commissioner, *held*, that one who entered the employment of such city without any express agreement as to his wages or his hours of work, and without any action on the part of the health commissioner, and for the first forty-three days worked eight hours per day, and during the remainder of the year worked three shifts of eight hours each in every two days, and received and accepted his wages at the same rate per day for all the days he was employed, upon pay rolls signed by him which stated the whole number of days, without protest to any official having authority to act in the matter, must be deemed to have estopped himself from afterward claiming payment for the extra hours so worked by him.

Appeal from a judgment of the superior court of Milwaukee county: Frank M. Fish, Judge. *Affirmed.*

Plaintiff was employed as quarantine guard by defendant's health commissioner. Such employment commenced on June 17, 1894, and continued, with the exception of brief intervals, from month to month, until May 17, 1895, without any express agreement as to wages. His duties were to guard certain houses, in which the inmates were supposed to be infected with smallpox, and to enforce quarantine regulations. At first, and until August 1, 1894, three guards were assigned to each house; the guards remaining on duty on eight-hour

shifts. On the date last mentioned one of the guards was withdrawn, and the remaining two guards continued guarding the house, working as before, so that each guard would be on duty three shifts of eight hours each every two days. Upon the theory that eight hours constituted a day's work, the plaintiff claims to have put in 1,096 hours' (or 137 days') overtime during his employment. Pay rolls were made out in the office of the health commissioner, certified to by him, and audited by the comptroller; and, upon approval by the council, city orders were drawn to the different persons named. In each of these pay rolls the plaintiff's name appears, and against which is noted the actual number of days worked, at the rate of $2.22 per day. The pay roll was signed by the plaintiff, and a city order for the amount specified therein was delivered to him. Plaintiff collected his pay according to the pay rolls, from time to time, without protest, except that when he received his first payment he spoke to the inspector, Mr. Curtis, and to the secretary of the health department, about it. "I asked them whether this was the full time, and I said that I first only worked eight hours, and later worked twelve hours, so I had overtime coming; and Mr. Diercks told me that they could not do it just now, but they would do it later on." After a full hearing of the evidence, the court directed a verdict for defendant. From the judgment entered thereon the plaintiff appeals.

*E. M. McVicker* and *Lynn S. Pease*, for the appellant, among other things, argued that the city ordinance fixing the hours of labor constituted an offer on the part of the city which it had authority to make, and became a part of the contract with its employees. *People ex rel. East Saginaw S. Mfg. Co. v. Board of State Auditors*, 9 Mich. 327; *Hartman v. Greenhow*, 102 U. S. 672; *Hall v. Wisconsin*, 103 id. 5; *Poindexter v. Greenhow,* 114 id. 270; Cooley, Const. Lim. 330, note; Story, Const. § 1391; *Fletcher v. Peck*, 6 Cranch,

Vogt vs. The City of Milwaukee.

87; *Fisk v. Jefferson Police Jury*, 116 U. S. 131; *Koch v. Milwaukee*, 89 Wis. 220; *Miller v. Milwaukee*, 14 id. 642; *Reif v. Paige*, 55 id. 496, 503.

For the respondent the cause was submitted on the brief of *Howard Van Wyck*, city attorney, and *C. H. Hamilton*, special assistant.

BARDEEN, J. An ordinance of the city of *Milwaukee*, so far as applicable to this case, is substantially as follows: Eight hours shall constitute a full day's work for city employees who work, and are paid therefor, by the day only. No city official shall employ workmen to work overtime unless such overwork be first recommended by the health commissioner. All bills for overwork performed must be accompanied by an order of the health commissioner, giving reason why such overwork was necessary. This ordinance was in force during the time plaintiff was in the city's service. At the time the plaintiff entered into the employment of the city, nothing was said as to the rate of wages, or as to the number of hours that should constitute a day's work. At first, and for about thirty days, he worked eight hours daily, and thereafter, without protest, what was equivalent to twelve hours a day. He was kept at work whenever his services were needed, receiving his pay monthly at the rate of $2.22 per day. It is insisted that the ordinance mentioned entered into and became a part of the contract between the parties, and that thereby the city became bound to pay the plaintiff the amount specified per day for each eight hours' service. It will be observed that the ordinance does not attempt to fix the wages that shall be paid the city employees, or to fix any limits or conditions as to overtime, except that it shall be recommended and certified to by the health commissioner.

Statutory provisions similar to the ordinance in question are in force in a number of states, and the same question

here presented has received the attention of the courts. The matter was quite fully discussed in *McCarthy v. New York,* 96 N. Y. 1, and the conclusion there arrived at meets with our complete approval. It was said, in effect, that the object of the statute in establishing a limitation on the hours was to confer a benefit upon the classes protected, but that it did not make labor beyond the statutory time illegal, or require compensation to be made therefor unless it was provided for in the contract of employment; that it was not the intent of the act that two statutory days' labor should be crowded into one calendar day, or to give the price of two for one calendar day's labor. So when the exigencies of his employment, or the requirements of his employer, call upon the laborer for a greater number of hours of labor than those specified in the statute, it is optional with him either to refuse to perform them, or to insist, as the condition of their performance, upon the payment of extra compensation for the extra work, but in the absence of such agreement there was no right conferred to demand extra compensation. A similar construction was given to a law of Connecticut in *Luske v. Hotchkiss,* 37 Conn. 219. See, also, *Brooks, v. Cotton,* 48 N. H. 50; *Averill v. U. S.* 14 Ct. Cl. 200.

As regards the plaintiff's employment by the city, there could not be an express contract to pay for eight hours' work, and an implied contract to pay for overtime or extra work. The work was all done under one contract of employment, and plaintiff might lawfully have quit after eight hours' work had been performed, and would have been en-. titled to pay accordingly. The evidence utterly fails to show any agreement as to overwork. The provision of the ordinance that workmen should not be employed to work overtime, except upon recommendation of the health commissioner, has some significance. The city charter provides that the comptroller of the city shall be the auditing officer, and that all claims and demands against the city shall be

Vogt vs. The City of Milwaukee.

audited and adjusted by him before they are allowed by the common council. It may well be claimed that the recommendation required should be of such a character as to carry knowledge to the comptroller that overwork had been required. But there is no claim in this case that a recommendation was so made; nor is there any evidence, that we can discover, that plaintiff ever brought his claim for overtime to the knowledge of the health commissioner. It is true that he testifies that he spoke to Mr. Curtis, who was inspector, but just what he said to him does not appear. He also spoke to the secretary of the board. But neither of these officers had any authority in the premises. It is not claimed that either of these officers had any authority to fix the amount of plaintiff's compensation, or to bind the city by any agreement as to overtime.

After the hours of plaintiff's service had been lengthened, he continued to draw his pay, without a word of protest except as before stated. In performing his work for the city, he was chargeable with notice of the powers and authority of its officers and agents, and he was bound to govern himself accordingly. For a period of at least ten months he continued to draw his pay, signing the pay rolls, receiving his orders, and cashing the same, without a suggestion that he was not fully satisfied therewith. Pay rolls were made out from a record kept in the commissioner's office, which showed the exact time plaintiff was on duty, and were certified to by the commissioner, and approved by the comptroller. A year and a half afterwards, plaintiff sues for overtime, upon the technical ground that eight hours constitute a day's work, and claiming that during all these months his pay has been but a fragment of the amount his due. The law will not tolerate any such claim. In absence of an express contract — and none is claimed — as to overtime, the fact that the pay rolls were made out, and his wages paid him, at a given rate, as effectively notified him

that his compensation for the time in service was the rate so specified as if he were formally notified. *Miller v. U. S.* 14 Ct. Cl. 200.

The alleged protest to the inspector and to the secretary of the board was not a protest to any officer of the city, such as would relieve plaintiff from the operation of the law of estoppel. It is perfectly evident from the situation that, had the proper city officials had notice that overtime was claimed, the plaintiff's services would either have been dispensed with, or a definite arrangement made. The testimony of Mayor Koch shows that $1.50 was the amount usually paid per day for unskilled labor, and, when the comptroller approved and the council allowed the pay rolls at $2.22 per day, it might well have been understood that plaintiff was being paid in full for his labor. It is true that courts are disinclined to enforce estoppels unless they can be subordinated to principles of equity. But this seems clearly to be a case where the rule should be invoked. The absence of an express agreement, the failure to make a proper protest, the payment of what seems to be the usual wages for the actual time in service, the acceptance of such payments for a long period of time, are all circumstances that speak loudly against the plaintiff's claim. The law which allows contracting parties, through the medium of an express contract, to fix in advance the value of a service to be rendered, also allows them to fix the value, in cases of implied contract, after the service has been rendered. It may as well be fixed by acts of the parties as by express agreement. Here it seems certainly to have been fixed by acts of the parties, and the plaintiff cannot now be permitted to dodge or escape the legal effect of his conduct.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.