DowNEV, Judge,
delivered the opinion of the court:
The plaintiff seeks to recover for services in excess of eight hours per day while employed as a member of the fire department maintained at the United States explosive plant at Nitro, West Virginia. He predicates his right of action on the act of Congress approved March 3, 1913, 37 Stat. *131 726, the act of March 4, 1917, 39 Stat. 1192, and Executive orders of March 24 and April 28, 1917, respectively, by which the President, by authority of the act of March 4, 1917, declared the existence of an extraordinary emergency and directed that when necessary for purposes of national defense laborers and mechanics, whether employed by Government contractors or by agents of the Government, might be required to work in excess of eight hours per day at rates of wages to be computed in accordance with the proviso to said act of March 4, 1917.
The original eight-hour law, taken from the act of 1868 and enacted in the Revised Statutes as section 3738, provided that—
“ Eight hours shall constitute a day’s work for laborers, workmen, and mechanics who may be employed by or on behalf of the Government of the I'Jnited States.”
This was followed by the act of August 1, 1892, 27 Stat. 340, which provided that—
“ The service and employment of all laborers and mechanics who are now or may hereafter be employed by the Government of the United States, by the District of Columbia, or by any contractor or subcontractor upon any of the public works of the United States or of the said District- of Columbia, is hereby limited and restricted to eight hours in any one calendar day, and it shall be unlawful for any officer of the United States Government or of the District of Columbia or any such contractor or subcontractor whose duty it shall be to employ, direct, or control the services of such laborers or mechanics to require or permit any such laborer or mechanic to work more than eight hours in any calendar' day except in case of extraordinary emergency,”
followed by further provisions for penalties to be assessed against any officer of the United States or any contractor or subcontractor who shall intentionally violate any provisions of the act.
The act of June 19, 1912, 37 Stat. 137, provided, among other things, that every contract made to which the United States was a party or which was made on behalf of the United States and involved an employment of laborers or mechanics should contain a provision that no laborer or *132 mechanic during any part of the contemplated work should be required or permitted to work more than eight hours a day.
The act of March 3, 1913, 37 Stat. 726, amending, sections 1, 2, and 3 of the act of August 1, 1892, provided that.—
“The service and employment of all laborers and mechanics who are now or may hereafter be employed by the Government of the United States or the District of Columbia, or by any contractor or subcontractor, upon a public work of the United States or of the District of Columbia, and of all persons who are now or may hereafter be employed by the Government of the United States or the District of Columbia, or any contractor or subcontractor, to perform services similar to those of laborers and mechanics in connection with dredging or rock excavation in any river or harbor of the United States or of the District of Columbia, is hereby limited and restricted to eight hours in any one calendar day,” followed by provisions prohibiting persons employed to perform similar services to those of laborers and mechanics, in dredging rivers or harbors, laboring more than eight hours a day, with reservations not here material and providing penalties.
In the naval appropriation act of March 4, 1917, 39 Stat. 1168, at 1192, is the following provision:
“ In case of national emergency the President is authorized to suspend provisions of law prohibiting more than eight hours labor in any one day of persons engaged upon work covered by contract with the United States: Provided- further,, That the'wages of persons employed upon such contracts shall be computed on a basic day rate of eight hours work, with overtime rates to be paid for at not less than time and one-half for all hours work in excess of eight hours.”
By Executive order dated April 28, 1917, the President directed as follows:
“Under authority contained in the naval appropriation act approved March 4,1917, Public, No. 391, 64th Congress, it is hereby ordered that the provisions of the eight hour act of June 19, 1912, are suspended with respect to persons engaged upon work covered by contracts with the United States, made under the War Department, for the construe *133 tion of any military building or for any public work which in the judgment of the Secretary of War is important for purposes of national defense in addition to the classes of contract enumerated in Executive order of March 24,1917.
“It is further declared that the current status of war constitutes an £ extraordinary emergency ’ within the meaning of that term as used in the eight hour act of March 3, 1913, 37 Stat., 726, and that laborers and mechanics employed on work of the character set forth above, whether employed by Government contractors or by agents of the Government, may, when regarded by the Secretary of War as necessary^ for purposes of national defense, be required to work in excess of eight hours per day, and wages to be computed in accordance with the proviso in the said act of March 4, 1917.
“This order shall take effect from and after this date and shall be operative during the pending emergency or until further orders.”
The situation at the Government explosives plant at Nitro and the plaintiff’s services divided themselves naturally into three periods.
The first period may be called the construction period and so far as the plaintiff’s service is concerned extended from August 7, 1918, to and including October 31, 1919. The United States had entered into a contract with the Thompson-Starrett Company for the erection of the explosives plant, denominating said company as its “construction managers ” and empowering said company as agents of the United States to make all necessary contracts for labor, materials, supplies, etc. For the period above stated the plaintiff was employed by the Thompson-Starrett Company as a member of the fire department organized and maintained at the explosives plant.
The second period embraces the time from November 1',. 1918, to January 15, 1919, inclusive, during which the Hercules Powder Company, was engaged, under contract, ire the manufacture of powder at this plant for the United States and during which period the plaintiff was employed as a member of said fire department by the Hercules- Powder Company. Up until December 5, 1918, he ranked' as a private in the fire department and thereafter as a lieutenant.
*134 The third period extended from January 16, 1919, to September 30, 1919, inclusive, during which time the plant was operated by the United States through its Ordnance Department and during which time the plaintiff was employed by the Ordnance Department as a member of said fire department, his service terminating- by resignation September 30, 1919.
During each of these several periods his employment was upon a monthly salary basis and he was paid in semimonthly installments the full amount of his fixed monthly salary.
What may be denominated the primary question for consideration is whether the plaintiff’s employment as a member of said fire department was of such a character as to entitle him to be rated as a “laborer” or “mechanic” within the meaning of the act of March 3, 1913. It seems to us quite useless to undertake to determine this question by the various definitions of the words “ laborer ” and “ mechanic,” which have been furnished us by the lexicographers. In a sense all men who work in any manner are laborers, for “ work ” and “ labor ” are synonymous terms; but we are interested in the meaning of the word as used in the act, and whether the services required of the plaintiff bring him within that meaning, for while it is to be conceded that a man serving as a member of a fire department, especially under the circumstances surrounding the maintenance of such a department at the Nitro plant, performs real manual labor for at least a part of his time, in the discharge of his duties as a fireman, it does not necessarily follow that he is such a laborer as comes within the contemplation of the eight hour law.
He performed such duties as are ordinarily performed by members of a city fire department, and, no doubt, by reason of the surroundings, the location, and character of the property to be protected and the required facilities for furnishing that protection, coupled with an absence of paved streets and such like improvements, some of his duties were of a more laborious character than if he were so employed in the city of Washington; but it is not contended that his duties, possibly strenuous at times, but only *135 at times, were in any degree other than those properly and necessarily pertaining to the duties of a member of a fire department, under such circumstances, in the work of preventing and extinguishing fires.
He came to this service of his own accord, because of the increased compensation offered, from a service of seven years in a city fire department. He therefore knew from experience the duties of a fireman, and it is safe to say that during his seven years’ service in the beautiful little city of Richmond, Indiana, he would have resented being classified as a “ laborer.” Further, he knew the customary hours of duty of a firemen, and we are informed by his own testimony that when he entered upon this duty at Nitro he knew that he was “ under the 24-hour system.” He expected to be on duty 24 hours per day, with the exception of the leave allowed; the necessities of the service required it, as he well knew from experience; he was furnished and occupied sleeping quarters at one of the fire houses, a condition attendant generally upon such a service, that he might be available to respond to a call at any moment; and, generally, every circumstance and condition repudiates the idea of an eight-hour day. There is too much of inconsistency in the idea that the daily hours of duty of a man in such an employment could be limited to eight hours, at least until the practice prevailing at the time of this employment and long theretofore has given way to a new and different system, and in the face of that prevailing x>ractice and the necessities of the service it seems wholly unwarranted to conceive that the word “ laborer ” as used in the eight-hour law was over intended or by any reasonable construction can be made to include such an employee.
In Gordon v. United States, 31 C. Cls. 254, Judge Weldon uses language discussing the status of a “ watchman ” which with the substitution of the word “ fireman ” would be peculiarly approximate. He says:
“ The term ‘ laborer ’ and ‘ watchman ’ are well understood in popular parlance and are clearly distinguished from each other in xiopular acceptation. Words are to be taken in their ordinary sense and meaning unless there is something to indicate that they are used in a different sense and a more enlarged or circumscribed signification.”
*136 Ancl in the Collins case, 24 C. Cls. 340, he held in substance that the employment of a watchman who was expected to guard the defendant’s property during the night could not hare contemplated a hiring upon the theory that eight hours was to constitute a day’s labor giving the right to the employee to quit at the end of eight hours’ service.
With even more force may it be said that in the case of the employment of a man as a member of a fire depai'tment at a monthly wage with no agreement impairing the obligation to perform the usual duties attendant upon such an employment, the very nature itself as well as the necessities of such an employment negative the idea of an eight-hour day.
That no erroneous inference may be drawn to the effect that if a different conclusion were to be reached as to the inclusion of the plaintiff within the purview of the eight-hour law, we should conclude that a right of recovery would follow, it is perhaps well to suggest the settled rule that none of the eight-hour laws have of themselves established an enforceable rule for the payment of wages.
They limit the hours per day during which a laborer may be required or permitted to work; by one of the later acts the limitation is required to be written in all contracts, prohibiting thereby an agreement to work more than eight hours a day, unless in an emergency, and penalties are provided against the representatives of the Government or the contractors who wilfully violate the act, but all these added provisions were evidently to strengthen the force of the law by prohibitions and penalties operative against those having to do with work of the character contemplated without giving to the laborer a right of action if, employed at a daily wage, his hours of employment should be extended beyond eight. It is scarcely worth while to discuss in detail the many cases. Among some of the earlier ones which have been followed we cite Martin v. United States, 10 C. Cls. 276, 94 U. S. 400; Driscoll v. United States, 13 C. Cls. 15, 96 U. S. 421; Averill v. United States, 14 C. Cls. 200; United States v. Moses, 126 Fed. 58.
But with the plaintiff’s declaration in the present case on the act of March 3, 1913, which of itself it would probably *137 be conceded could give no cause of action, there is coupled the provision from the act of March 4,1917, and the Executive order, under the authority of that act, declaring the existence of an extraordinary emergency, both quoted above. This latter act for the first time, contingent upon an executive declaration of an emergency, injects a statutory provision for additional pay for labor over eight hours per day during the emergency, but it is apparent that the authority to suspend the prohibitory provisions of the eight-hour law could confer no benefits upon one not within the scope of that law and we have already so concluded as to the plaintiff in his employment here involved. It is apparent also that there are limitations by necessary construction to be put upon the act of March 4, 1917, and executive action thereunder, which would bear adversely upon the plaintiff’s right of recovery even if his status.otherwise was not as we have found, blit the conclusion already reached as to his status renders it unnecessary to discuss this act in detail so far as the instant case is concerned, and since it must be known to the court that it is likely to be the basis of many other actions for our consideration construction is reserved.
But there is another view of this case which, aside from all that has been said, must preclude a recovery. The plaintiff came to this service fresh from a service of seven years as a fireman in a city fire department and with full knowledge of the nature of the service and in the belief that he was entering the service, as he says, “under the 24-hour system.” His compensation, evidently very satisfactory to him, since it was the inducement for his coming, was fixed on a monthly basis, and during the entire period of his service he was paid the agreed monthly compensation in semimonthly installments. Having served through these three periods of employment and having received all the compensation which it was ever agreed that he should receive and all which he at any time during that service demanded or expected to receive, he, for the first time, by this suit demands an additional compensation which, if allowed, would serve to increase his compensation to an amount two or three times that contemplated during the entire period of his service by either party.
*138 In this connection it is to be remembered, and the record and findings clearly so show, that he never at any time made any objections to the hoiirs of service required of him, never made any protest as to the insufficiency of the payments made, never claimed to anyone in authority that he was entitled to any other or different compensation, but, upon the contrary, received every semimonthly payment made to him as in full payment of all that was due him for services rendered.
It is to be noted that his service under the Thompson-Starrett Company terminated on the 31st day of October, 1918, and no demand of any kind was made for additional compensation until the commencement of this suit about a year and a half after the termination of that service. He immediately and voluntarily reentered the same service under the Hercules Powder Company at the same compensation, and for that service, terminated on the 15th day of January, 1919, he made no demand whatever for additional compensation until the commencement of this suit about 15 months thereafter. And upon the termination of his service under the Hercules Powder Company he immediately reentered the same service under the Ordnance Department with the same compensation, and he made no demand whatever for or in any manner asserted any right to additional compensation until the commencement of this suit more than 6 months after the termination of the last-named service.
It is against reason and justice as well as the conclusions of the courts to permit one to continue in a service under such circumstances, receive an agreed compensation at regular intervals during a considerable period of time without any protest or assertion in anjr manner of any claimed right to other or additional compensation, and then successfully assert such a right after separation from the service. He should seasonably assert his demands, to the end that the employer may be informed as to what .they are when there is yet opportunity for protection against unwarranted demands by separation from the service. There was in this case a perfect understanding as to the compensation as well as the nature and extent of the services to be rendered *139 in return for it, and the satisfactory character to both parties both of the service and compensation is indicated by two voluntary reentries into the same service on the same terms. Among the cases holding against a right of recovery under similar circumstances we find none wherein it seems to us the facts should more certainly preclude a recovery than in this.
We refer particularly, without apparent necessity for quoting, to Garlinger v. United States, 169 U. S. 316. Also Martin's case, supra; Driscolls case, supra; Averill's, case, supra; and Moses’ case, supra. Grissell v. Noll Brothers, 36 N. E. 452; Vogt v. City of Milwaukee, 74 N. W. 789; Nicholas v. United States, 55 C. Cls. 188; affirmed 257 U. S. 71, and Norris v. United States, 257 U. S. 77.
A minor feature of the case, applicable to a part of the claim only, has not been mentioned. In view of our conclusions as to the whole case it might be passed without reference except for the implication that it had been overlooked. While the plaintiff’s employment during the first period thereof was by the Thomson-Starrett Company, acting as agents for the United States, under express authority, and his employment during the third period was by the Ordnance Department of the United States direct, his employment during the intermediate period was by the Hercules Powder Company. The contract with that company contained no agency clause such as did the Thompson-Starrett Company contract, and it is contended that it does not permit of a construction which would malee the company the agent of the United States for the employment of labor, but that its status was that of a contractor and not an agent, and if there was liability otherwise it could not attach, during this period, against the United States. Under the circumstances we do not find it necessary to decide this question.
We conclude, for reasons stated, that the plaintiff is not entitled to recover.
GRAHAM, Judge; Hat, Judge; Booth, Judge, and Campbell, Chief Justice, concur.