Filed Feb. 15, 1894.

----------◆----------

No. 1,220.

## GRISELL *v.* NOEL BROTHERS FLOUR, FEED COMPANY.

SUPERIOR COURT.—*Appeal From Special to General Term.—Bill of Exceptions.—Filing After Submission of Cause.*—A superior court may, in general term, on appeal from special term, receive and act upon a bill of exceptions, and take judicial notice of the same, when such bill is filed within the time granted by the trial judge, although the bill has been filed after errors have been assigned and the cause submitted.

BILL OF EXCEPTIONS.—*Certification that the Bill Contains all the Evidence.— When Sufficient.*—The expression "This was all the evidence given [in] said cause," at the close of the evidence in a bill of exceptions, is a substantial compliance with the law, and is sufficient.

SAME.—*Evidence Sufficiently Incorporated if Given in Substance.—Irresponsive Answers.*—If the testimony be given in substance in a bill of exceptions, it is all that is required, and the questions propounded need not be set forth. Where answers are made that are not responsive to questions, the answer will not, on that account, be disregarded, in the absence of objection or motion to strike out.

WORK AND LABOR.—*The Eight-Hour Law.—Pay for Extra Time.—When Collectible.*—Under the act of March the 6th, 1889, constituting eight hours a day's work for certain classes of laborers, any such laborer can not, without an agreement (express or implied) for pay for extra time, hold the master responsible therefor, especially after the servant has received his wages as agreed upon in the contract of hire.

From the Marion Superior Court.

*C. S. Denny* and *W. F. Elliott*, for appellant.

*D. A. Myers, N. Morris, L. Newberger* and *J. B. Curtis*, for appellee.

REINHARD, J.—This action was commenced before a justice of the peace, and from there appealed to the court below. At special term the cause was tried by a jury, and a verdict was returned and judgment rendered in favor of appellant for $125. On appeal to the general term, the judgment of the special term was reversed. From this ruling an appeal was taken to the Supreme Court, and that tribunal ordered the case transferred to the docket of this court.

The only error assigned in the Supreme Court was that the court in general term erred in reversing the judgment of the court in special term. The sole ground upon which the judgment of reversal was based was the insufficiency of the evidence to sustain the verdict.

At the time of the rendition of the judgment at special term, the appellee was awarded sixty days' time to prepare and file a bill of exceptions for its appeal to the general term. The record shows that this bill was filed within the time required. It further appears, however, that before the bill of exceptions was filed the appellee (who was the appellant in the general term of the court below) had filed its transcript of entries and assignment of errors; and that in fact the cause had been submitted on appeal before the filing of the bill of exceptions.

It is urged on behalf of the appellant here, that, for the reasons stated, the superior court in general term had no right to consider this bill of exceptions, and that a reversal based upon errors disclosed by such bill only, was a nullity.

Appeals from a special to the general term of the superior court are governed by the rules that apply to appeals from the circuit courts to the Supreme and Appellate Courts, except when the statute otherwise provides. *Bartholomew* v. *Preston*, 46 Ind. 286; Elliott's App. Proced., section 310, and cases cited.

Under the statute, however, no transcript need be filed in such appeal, as is required in appeals to this court, the cause being heard and determined "upon the original papers and records filed and made in the cause at special term, and such matters as are properly made part thereof by bills of exceptions." Acts 1871, p. 53, section 25.

As it was not necessary to copy the bill of exceptions into a transcript before it could be looked to and considered by the general term, the same strictness can not be required that obtains in an appeal to this court or the Supreme Court in such matters. Of course, a bill of exceptions could not be considered by this court unless the same were copied or incorporated into the transcript, and hence in practice it can seldom, if ever, happen that a bill of exceptions will be filed in this court subsequently to the assignment of errors, unless it be by reason of a writ of *certiorari;* for in all cases the assignment of errors is made upon the transcript into which the bill of exceptions is copied or incorporated. This, as we have said, is not the rule in the superior court, and, therefore, the rules of procedure governing in the Supreme and Appellate Courts, in this respect, can not be strictly applicable to the question in hand.

If we should concede that in strict practice the appellee should have postponed the submission of his cause to the general term until after the filing of its bill of exceptions, we do not think it must follow as a necessary result that the present appeal be sustained and the judgment of the general term reversed. If the court's attention had been directed to the matter, it would doubtless have set aside the submission and permitted the appellee to refile its assignment of errors after the filing of the bill of exceptions. If the court had this power, of which we entertain no doubt, since the bill of exceptions was

filed within the time granted, no harm could have resulted to either of the parties if the court treated the assignment of errors and submission as having been made after the filing of the bill of exceptions.

But we do not think it necessary that the bill of exceptions be filed prior to the assignment of errors and the submission of the cause. The general term of the superior court is not a different court from the special term, but only a different branch or division of the same court. The general term takes judicial cognizance of all the record proceedings of the special terms, and *vice versa.* The statute requires no transcript of any such proceedings to bring them to the notice of the court. The court may, of course, make such rules for its own convenience and the arrangement and dispatch of its business as it may deem necessary, and in the making and interpretation of these rules it has a very wide discretion. The court at general term, being also an appellate court, assignments of errors are, of course, necessary under the general practice in order to bring to its attention the points relied upon for a reversal or modification of the judgment at special term. But we know of no legal requirement that will prevent the court at general term from receiving a bill of exceptions after errors have been assigned and the cause is submitted, provided such bill is filed within the time granted by the trial judge. One of the objects of a bill of exceptions is to enable the complaining party to establish in the appellate tribunal the errors complained of. The assignment of errors is the complaint, and the bill of exceptions the proof in support of such complaint; and it is proper that the court should receive the proof at any time during the hearing of the cause. We are, therefore, of the opinion that the court, in general term, may act upon a bill of exceptions,

and take notice of the same, though it has been filed after the submission of the cause after appeal.

Appellee's counsel further insist that the bill of exceptions does not purport to contain all the evidence given in the cause. At the close of the evidence it is certified that "this was all the evidence given said cause." We think this is a substantial compliance with the law. The exact formula that was once required by a rule of the Supreme Court is no longer necessary, since the abrogation of that rule. It is sufficient if equivalent terms be employed. *Jones* v. *Layman*, 123 Ind. 569; *Beatty* v. *O'Connor*, 106 Ind. 81; *Brock* v. *State, ex rel.*, 85 Ind. 397.

By a clerical error which is obvious, we think, the word "in" was doubtless omitted from the above statement, but there is enough left in it to amount to a certification that the bill contains all the evidence. Nor do we think it apparent on the face of the bill, as urged by appellant's counsel, that the evidence is not all contained therein. The questions propounded to a witness need not be set forth. If the testimony be given in substance, it is all that is required, and where answers are made that are not responsive to questions, the answers will not, on that account, be disregarded, in the absence of objection or motion to strike out. The objections made to the bill of exceptions are not tenable.

We think the only question raised in the superior court at the general term was that of the sufficiency of the evidence, and it is our conclusion, after a careful review of the same, that such evidence was wholly insufficient to sustain the verdict, and that the court did right in so holding.

The testimony of the appellant himself was sufficient to show that he had no valid claim. He testified that he was employed by, and commenced to work for, Noel Bros.

on the 27th day of May, 1890, and continued to work for them, and afterwards for the incorporated "Noel Bros. Flour, Feed Company," until the 12th day of March, 1891. His duties were to deliver oats, feed, and flour, in different parts of the city of Indianapolis. He testified that when Ed Noel employed him he (witness) asked Noel what he was paying, and he said $1.25 per day; that his duties consisted of feeding the horses he drove and assisting in caring for the work horses belonging to the concern. He stated that he performed the work required of him, working frequently till 9 o'clock in the night, and sometimes later; that he was usually paid on Monday, but sometimes not till Tuesday, and for a whole week's work he received $7.50; that he worked on an average eleven hours per day; that if he laid off or missed any time from his work, it was deducted at the rate of $1.25 per day, but that he did not miss more than two or three days during the entire time; that his work was well worth $1.25 a day, counting eight hours to the day.

In answer to the question of his counsel, whether, at any time, he demanded money for overtime or work, he stated that after he quit work, on the 12th day of March, 1891, he demanded pay for all work performed each day over eight hours, which Mr. Noel refused to pay, and that he then brought this suit; that appellee refused to pay him anything for overwork; that, during the time he worked there, witness frequently complained of getting home late in the evening, and that he told them he ought to have more money than he was getting; that he also had to feed, curry, and care for the horses on Sunday, though nothing was said about that when he commenced; that he worked about three hours every Sunday.

On cross-examination, he testified that Noel informed

Grisell *v.* Noel Brothers Flour, Feed Company.

him what his duties were when he employed him, and said to him that he wanted him to drive one of the delivery wagons, to feed and care for his own team, and help feed and care for the other horses; that nothing was said about his feeding the horses on Sunday, but that he found out that he and another man were to take care of the horses on Sunday also; that the contract was for $1.25 per day, and that nothing else was said as to pay, except that he was to be paid by the week.

The appellant was then asked, and answered, questions as follows:

"Q. Under the terms of your contract between you and Mr. Noel, have you been paid for all the work that you have done?

"A. Yes: he has paid me in full so far as the contract is concerned, but nothing for my overtime.

"Q. Did you at any time make any contract with Mr. Noel or the defendant other than the contract made on May 24, 1891, when you commenced work?

"A. No.

"Q. After September 1, 1890, you continued to perform the same work and drew the same pay each week as you did prior to that date?

"A. Yes,[sir: there was no change.

"Q. After the first day of September, 1890, on each Monday, you received your wages for the preceding week up to the 12th day of March, 1891, when you quit work, did you not?

"A. Yes, sir.

"Q. Did you not understand that you were, on each Monday, receiving all the money that was due you under your contract for work performed during the preceding week?

"A. Yes, sir: I kicked nearly every time I was paid,

about the pay I was getting for the number of hours I was required to work.''

On reëxamination, the appellant gave the following testimony:

''Q. You mean that you were only paid $1.25 for each day's work, and that this money was paid on Monday of each week for the amount due you the preceding week?

''A. Yes, sir.''

On recross-examination, appellant testified, in subtance, that he never notified Noel, or any one for him, that he had a claim against appellee for overwork until after he was discharged, but spoke to him about it twice (once while he was working for him, and once after the corporation was formed), and that he spoke to the men at the store a great many times, including Noel's brother, Vance Noel, about the long hours he was working, but never presented any claim for money until after he quit work.

This was the strongest evidence on the part of the appellant in support of his claim. Noel testified that he employed appellant by the week, at $7.50, and had paid him in full. Whether appellant worked by the day or week can make no difference respecting the question in dispute. There is no material conflict in the evidence, and it shows that at the end of a week's work appellant received $7.50, knowing that this was all the appellee intended to pay him. Appellant, therefore, received the money with the implied understanding that it constituted full compensation, under the contract, for all the work he had performed up to the end of such week.

It is the theory of appellant that by virtue of the statute commonly known as the eight-hour law, he is entitled, without any special agreement, to receive extra pay for all the time he worked for the appellee over eight hours in any calendar day. Under the act approved

March 6, 1889, eight hours is declared to constitute a legal day's work for all classes of mechanics, working-men and laborers, excepting those engaged in domestic labor, but overwork for extra compensation, by agreement, is expressly permitted. Elliott's Supp., section 1606.

The parties have discussed, to some extent, the constitutionality of the act, but as the cause comes to us by an order of transfer from the Supreme Court, it is evident that that court is of opinion, either that the question of the constitutionality is not properly presented, or that the case may be decided without passing upon that question. Assuming that the act is constitutional, therefore, we proceed to determine whether, by its provisions, the appellant is entitled to recover anything beyond what, by his own admission, he has already received.

It was not intended by the statute in question, to abridge the right of contracting for a greater number of hours than eight in any calendar day, and any attempt to do so must inevitably fail of the result desired, for the abundant reason that the reduction of the hours of labor would inevitably be followed by a corresponding reduction of the rate of compensation, and would in the end leave the parties in the condition they were before the law was enacted.

The statute itself permits the parties to contract for extra time and compensation, and this, we apprehend, they would have the right to do without the statute. If parties may agree that for a day of eight hours the employe shall receive a stipulated sum, they also have the right to agree that for a day of more than eight hours he shall receive a definite sum.

The parties to this action certainly had the right to stipulate that for a day of eight hours the appellant should receive $1, and for a day of eleven hours $1.25,

the 25 cents being the compensation for over-work. The
fact that the subject of extra compensation was not men-
tioned, would not, in the least, impair the validity of a
contract for $1.25 for every day of eleven hours' work.
If the parties could make an express contract of that
tenor, the law will uphold an implied agreement to the
same effect. The appellant must recover, if at all, either
upon an express contract or on an implied one. If one
person employs another to perform a single day's labor
for him at $1.25, and at the end of that day the employer
pays the laborer $1.25, and the latter accepts it in pay-
ment of the day's work, he can not afterwards recover
an additional sum, albeit he may have worked nine or
ten or eleven hours, instead of eight hours, and notwith-
standing the law under examination makes eight hours
a legal day's work.

The acts and conduct of the parties in the case sup-
posed are such as to raise a conclusive presumption that
the amount received by the employe was accepted in full
payment of what was due him. The same rule applies
when the work is done by the week, or month, or year.
There can be no doubt that in the present case the
appellee paid, and the appellant accepted, at the end of
each week, the sum of $7.50 in full payment of the work
done by him during the previous week.

The appellant testified, in effect, that he knew when
he entered upon appellee's employment the nature and
the amount of the work that was required of him, as well
as the compensation he was to receive therefor. If, how-
ever, at the end of the first day, or the first week, he
found that the number of hours he was to work per day
was greater than he expected, or that the compensation
he was to receive for a day's work was not for eight, but
for ten or eleven hours of such work, and he was not
satisfied with such arrangement, he should have de-

manded more pay or insisted on a smaller number of hours of work per day, and he should have exacted an agreement to that effect from his employer. If the latter refused to accede to this, the appellant had his option to quit the employment or to continue at the same rates. By continuing in the employer's service under the terms of the employment, he waived any right to claim additional compensation. This question was fully passed upon and decided by this court in the case of *Helphenstine* v. *Hartig,* 5 Ind. App. 172.

That decision is still in accord with our views of the law.

Under a New York statute, of which ours is almost an exact copy, the court of appeals reached the same conclusion in a case, the facts of which were almost identical with those in the present one. It was there held that "The intent of the act was to place the control of the hours of labor within the discretion of the employe, giving him the privilege, at his option, to refuse to work beyond the eight hours, or to secure extra compensation for extra work by stipulation in the contract of employment. In the absence of any such stipulation the language of the act repels any inference of an intent to confer a right upon an employe to charge for more than one day's labor for services rendered in any calendar day; and for such services he may not demand any extra compensation." *McCarthy* v. *Mayor, etc., City of N. Y.,* 96 N. Y. 1.

To the same effect see *United States* v. *Martin,* 94 U. S. 400; *Schurr* v. *Savigny,* 85 Mich. 144, 48 N. W. Rep. 547; *Luske* v. *Hotchkiss,* 37 Conn. 219; *Brooks* v. *Cotton,* 48 N. H. 50.

Our attention has not been called to a single authority in support of the contention that, under such a statute as the one relied upon, a laborer who works more than

eight hours in twenty-four may recover for extra services in the absence of a special or implied contract to that effect, and we have not been able to find such an authority.

The cases cited abundantly support the conclusion reached by the general term of the superior court—a conclusion, by the way, in which the trial judge himself is shown to have concurred.

The jury were not warranted by the evidence to return a verdict for the appellant for any amount.

Judgment affirmed.

Filed Feb. 13, 1894.