DAVIS, DIRECTOR GENERAL, ETC., v. CLAPP.

[No. 12,091. Filed December 9, 1925.]

MASTER AND SERVANT.—*Workman transferred from one job to another at less wages who continuously received the wage for the job at which he was working could not recover from employer wages for the first job.*—A workman employed to work in a specified employment at sixty-two cents per hour who was informed by his employer that the latter's rules did not permit a man of his age to perform such work, but that he could have other employment at less pay, and who accepted the proposition and, for more than a year, did the work referred to and received the pay therefor, could not recover the additional compensation that he would have received for the first job.

From Marion Superior Court (A 10,046) ; *Sidney S. Miller,* Judge.

Action by Clarence V. Clapp against James C. Davis, Director General of Railroads, Agent. From a judgment for plaintiff, the defendant appeals. *Reversed.* By the court in banc.

*Pickens, Davidson, Gause & Pickens* and *Max M. Hobbs,* for appellant.

*Carey & Cox,* for appellee.

McMahan, J.—This is an action by the appellee against the appellant for wages which the appellee claims he earned while in the employ of appellant from November 16, 1918, to June 30, 1920. He worked for appellant for a total of 5,023 hours, and brought this action to recover the difference between forty-five cents per hour, which he received and receipted for, and sixty-two cents per hour, which he claims is owing to him under the original agreement made with him by appellant's foreman to pay sixty-two cents per hour as a "step-man," and asks for damages in the sum of $1,406.44. There was a verdict and judgment for appellee for $500.

Appellant contends that the verdict is not sustained by sufficient evidence and is contrary to law.

The evidence, without conflict, shows that in November, 1918, John Jefferson, who was working for appellant as a machinist, and John Linegar, who was a foreman and superintendent of appellant's shops in Indianapolis, had a conversation concerning the employment of a "handy man" around the shops. Jefferson was told the job would pay sixty-two cents per hour. He saw appellee, who was then working on a day shift for another railroad. The result was that appellee made application to appellant for employment as a "step-man" at the rate of sixty-two cents an hour. He began work November 16, at 6 p. m. and worked that night. On the evening of the eighteenth, when he came to work, he was shown a letter from the railroad administration to the effect that no one over a certain age could be employed in the position in which appellee was working. Appellee was informed that the order automatically put him out of the job; that if he wanted to go back to the railroad for which he had been working, he could do so, or that he could remain with appellant as a mechinist's helper at forty-five cents an hour.

Appellee gave up a day job where he was getting forty-five cents an hour and was vexed about having to take a night job at the same wages, but remained in the employ of appellant until June, 1920. During this time, he received his pay every two weeks at the rate of forty-five cents an hour without any objection or claim that he was entitled to more. He did, however, make complaint to the labor union of which he was a member of the treatment received from appellant, and it investigated the matter, but was not successful in having appellant make any change in the wages paid. During all the time appellee was in the employ of appellant, he did the work of a machinist's helper and drew the wages of a machinist's helper.

Appellee concedes that he was informed by appellant, when he returned to work the second day, that under the order of the railroad administration, he could not, because of his age, be employed in the position in which he had started to work, and for which he was to receive sixty-two cents an hour. He nevertheless contends that he was entitled to remain in the employ of appellant and to compel appellant to pay him at the rate of sixty-two cents an hour. And this in face of the fact that he had been informed that he could return to his former job or continue with appellant as a machinist's helper and receive forty-five cents an hour. It may be claimed by appellee that he did not receive fair treatment from appellant, but that did not give him a legal right to remain in appellant's employ and to force appellant to pay him a higher wage than the forty-five cents an hour. Appellant was under no legal obligation to retain appellee in his employ for any fixed or definite period. He could have discharged appellee the day after he went to work. Had appellant done so, he could not have been held liable for compensation thereafter. When informed that he could remain in appel-

lant's employ at forty-five cents an hour, appellee had the right to accept or reject the proposition.

As was said in *Osborn* v. *Presser* (1899), 8 Pa. Dist. Rep. 271: "When a servant is paid less wages than he had been receiving under his contract of employment and takes the money week after week without objection or demand for more, there is a legal presumption that the money is paid and received under an agreement for a reduction, and that the amount paid and received is in full payment. * * * He cannot remain in the service with a mental reservation of an intention to sue for an alleged balance after his employment has come to an end."

*Grisell* v. *Noel Brothers, etc., Co.* (1894), 9 Ind. App. 251, 36 N. E. 452, is quite similar to the instant case. We quote from the opinion in that case as follows: "The appellant testified, in effect, that he knew when he entered upon appellee's employment the nature and the amount of work that was required of him, as well as the compensation he was to receive therefor. If, however, at the end of the first day, or the first week, he found that the number of hours he was to work per day was greater than he expected, or that the compensation he was to receive for a day's work was not for eight, but for ten or eleven hours of such work, and he was not satisfied with such arrangement, he should have demanded more pay or insisted on a smaller number of hours of work per day, and he should have exacted an agreement to that effect from his employer. If the latter refused to accede to this, the appellant had his option to quit the employment or to continue at the same rates. By continuing in the employer's service under the terms of the employment, he waived any right to claim additional compensation."

We hold, under the facts in this case, that the agreement on the part of appellant to pay appellee sixty-two

cents an hour for his work terminated November 18, 1918, and that thereafter appellant was liable to appellee at the rate of forty-five cents an hour.

Judgment reversed, with directions to grant a new trial and further proceedings consistent with this opinion.