## UNITED STATES *v.* MARTIN.

1. The act of Congress of June 25, 1868 (15 Stat. 77), declaring that eight hours shall constitute a day's work for all laborers, workmen, and mechanics employed by or on behalf of the government of the United States, is in the nature of a direction by the government to its agents.

2. It is not a contract between the government and its laborers, that eight hours shall constitute a day's work. It neither prevents the government from making agreements with them, by which their labor may be more or less than eight hours a day, nor does it prescribe the amount of compensation for that or any other number of hours' labor.

3. Where, therefore, a laborer, in the habit of working for the government twelve hours a day, for $2.50 a day, is informed by the proper authority that, if he remains in the service at that compensation, he must continue to work twelve hours a day, and he does so continue, and is paid accordingly, he cannot afterwards recover for the additional time over eight hours as a day's labor.

4. An allowance by the government, upon the application of the laborer, of a sum for the excess of time over eight hours per day, is, when accepted by him in full of the account, a bar to any further claim.

APPEAL from the Court of Claims.

This was a petition filed by Martin against the United States. The court below found the following facts: —

1. In the year 1866 or 1867 the claimant was employed by the foreman of the steam-heating and gas works at the Naval Academy, at Annapolis, to work for the defendants at $2.50 a day, with the understanding that during the season of steaming, which was from the 1st of October to the 1st of June, his time

of labor was to be twelve hours a day. During the seasons of steam-heating he was fireman at the steam-boilers, and at other times he was employed in assisting in repairing pipes, digging, and shovelling, or in ordinary labor and work.

2. In July, 1868, upon the passage of the act constituting eight hours as a day's work for all laborers employed on behalf of the government, called the "Eight-Hour Law," 15 Stat. 77, the claimant and other laborers at said academy spoke about that law to the foreman, who put on an additional man in the gas-works (where the claimant was not employed), and reduced the time of labor of the men in said gas-works to eight hours a day. Soon afterward, the men told him they would rather have half a dollar a day additional than to have the eight hours' work. Admiral Porter, then superintendent of the academy, was informed of what the men said, and he told the foreman that he would not give more pay, and that if any one would not work the full hours, he would put some one in his place. The claimant was present and heard this conversation. Nothing more was said or done in the matter, and the claimant went on with his work, laboring the number of hours per day as before, according to the original understanding.

3. From the 25th of June, 1868, when the eight-hour law passed, to the 19th of May, 1869, when the President's proclamation in relation to said act was issued, 16 Stat. 1127, the claimant worked two hundred and thirty-one calendar days, twelve hours each day, and ninety-seven calendar days, eight hours each day. From said 19th of May, 1869, to the time of his final discharge, Oct. 15, 1872, he worked seven hundred and fifty-two and a half calendar days, twelve hours each day, and four hundred and thirty nine and a half calendar days, eight hours each day.

4. For all of said labor the claimant was paid at the rate of $2.50 per calendar day, except that, for reasons which do not appear in evidence, he was paid at the rate of $2.25 per day for seventy-four days of twelve hours each, in March, April, and May, 1870, and for twenty-six days of eight hours each, in June, 1870. Payments at said rates were made to him at the end of each month during his time of service, and were received by him without protest or objection.

5. While the claimant was so employed, the pay of ordinary laborers at the academy was $1.75 a day ; and the firemen were paid $2.50 a day, because the time was longer and the work harder. The wages of firemen in the works of the gas company, a private corporation, at Annapolis, has since the war been $2 a day of twelve hours' labor, and they had more work to do than the claimant had while similarly employed by the defendants.

6. In the year 1873, the claimant made a formal application, in writing, to the Fourth Auditor of the Treasury, for arrears of pay, claimed as due him under the second section of the act of May 18, 1872, 17 Stat. 134, between the 25th of June, 1868, and the 19th of May, 1869, on account of his said employment. The auditor thereupon stated the account, and allowed the claimant $205.63, which was admitted by the Second Comptroller ; and that amount was paid to the claimant, who receipted for the same, in writing, in full of the account.

The court below dismissed the petition, but, on a subsequent day of the term, made an order vacating the judgment, and directing, for the purpose of an appeal, a *pro forma* judgment to be entered in favor of the claimant in the sum of $1,019.49.

The United States thereupon appealed.

*Mr. Assistant Attorney-General Smith* for the United States.

*Mr. Charles E. Hovey, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

On the 25th of June, 1868, Congress passed an act (15 Stat. 77), declaring " that eight hours shall constitute a day's work for all laborers, workmen, and mechanics now employed, or who may hereafter be employed, by or on behalf of the government of the United States." Rev. Stat. sect. 3738.

This was a direction by Congress to the officers and agents of the United States, establishing the principle to be observed in the labor of those engaged in its service. It prescribed the length of time which should amount to a day's work, when no special agreement was made upon the subject. There are several things which the act does not regulate, which it may be worth while to notice.

First, It does not establish the price to be paid for a day's

work. Skilled labor necessarily commands a higher price than mere manual labor, and whether wages are high or low depends chiefly upon the inquiry whether those having labor to bestow are more numerous than those who desire the service of the laborer. The English statute-books are full of assizes of bread and ale, commencing as early as the reign of Henry II., and regulations of labor, and many such are to be found in the statutes of the several States. It is stated by Adam Smith, as the law in his day, that in Sheffield no master cutler or weaver or hatter could have more than two apprentices at a time, and so lately as the 8th Geo. III., an act, which remained unrepealed until 1825, was passed, prohibiting, under severe penalties, all master tailors in London, or within five miles of it, from giving, or their workmen from accepting, more than two shillings sevenpence halfpenny a day, except in the case of general mourning. Smith's Wealth of Nations, 125 (6th Oxford ed. of 1869). A different theory is now almost universally adopted. Principals, so far as the law can give the power, are entitled to employ as many workmen, and of whatever degree of skill, and at whatever price, they think fit, and, except in some special cases, as of children or orphans, the hours of labor and the price to be paid are left to the determination of the parties interested. The statute of the United States does not interfere with this principle. It does not specify any sum which shall be paid for the labor of eight hours, nor that the price shall be more when the hours are greater, or less when the hours are fewer. It is silent as to every thing except the direction to its officers that eight hours shall constitute a day's work for a laborer.

*Second*, The statute does not provide that the employer and the laborer may not agree with each other as to what time shall constitute a day's work. There are some branches of labor, connected with furnaces, foundries, steam or gas works, where the labor and the exposure of eight hours a day would soon exhaust the strength of a laborer, and render him permanently an invalid. The government officer is not prohibited from knowing these facts, nor from agreeing, when it is proper, that a less number of hours than eight shall be accepted as a day's work. Nor does the statute intend that, where out-of-door labor in the

long days of summer may be offered for twelve hours at an uniform price, the officer may not so contract with a consenting laborer.

We regard the statute chiefly as in the nature of a direction from a principal to his agent, that eight hours is deemed to be a proper length of time for a day's labor, and that his contracts shall be based upon that theory. It is a matter between the principal and his agent, in which a third party has no interest. The proclamation of the President and the act of 1872 are in harmony with this view of the statute.

We are of the opinion, therefore, that contracts fixing or giving a different length of time as the day's work are legal and binding upon the parties making them.

In the case before us, the claimant continued his work, after understanding that eight hours would not be accepted as a day's labor, but that he must work twelve hours, as he had done before. He received his pay of $2.50 a day for the work of twelve hours a day, as a calendar day's work during the period in question, without protest or objection. At that time ordinary laborers under the same government received but $1.75 per day at the same place, and those engaged in the same department with the claimant in a private establishment, at the same place, received but $2 for a day's work of twelve hours, and the finding adds, "they had more work to do than the claimant had while similarly employed." The claimant's contract was a voluntary and a reasonable one, by which he must now be bound.

In 1873, the claimant applied for the same arrears of pay as are here in question, and received from the auditor an award of $205.63. That amount was paid to the claimant, and he receipted in writing in full for the account. This has often been held in this court to be a bar to any further claim. *United States* v. *Justice,* 14 Wall. 535; *United States* v. *Child,* 12 id. 232.

*Judgment reversed, and cause remanded with directions to dismiss the petition.*