### UNITED STATES v. MOSES.

(Circuit Court of Appeals, Ninth Circuit. November 2, 1903.)

No. 927.

**1. UNITED STATES—LABORERS' AND MECHANICS' WAGES—EIGHT-HOUR LAW.**

Neither the eight-hour labor law of August 1, 1892, c. 352, § 1, 27 Stat. 340 [U. S. Comp. St. 1901, p. 2521], which fixes eight hours as a legal day's work for laborers and mechanics employed by the government, and makes it unlawful for any officer to require or permit a longer day's work, nor article 62, par. 812, of the army regulations, series 1901, providing that eight hours shall constitute a day's work for laborers and mechanics employed by or on behalf of the United States, except in cases of emergency, affects the question of the wages of a laborer or mechanic so employed, which are governed solely by his contract; and if such an employé, whose wages per diem are fixed by his contract, knowingly works more than eight hours per day without any agreement for additional compensation, no such agreement is implied, and neither the statute nor regulation gives him a right to recover additional pay for the overtime.

**2. CONTRACT OF HIRING—CONSTRUCTION—TIME OF TERMINATION.**

Plaintiff was employed as a carpenter by a quartermaster officer of the army to work on army buildings, to be constructed at Nome, Alaska, until their completion. By the contract he was to be furnished transportation to Nome, and if he completed the term or became incapacitated to work was to be given transportation back to Seattle. He fulfilled his contract, and on completion of the buildings was discharged, and after a short delay for a vessel was furnished return transportation. *Held,* that he was not entitled to wages from the time of discharge to the time of his return, his contract having terminated by its terms on completion of the buildings.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

For opinion below, see 116 Fed. 526.

This is an action arising upon a contract entered into between the appellant and the appellee in May, 1900, in the city of Seattle, state of Washington, wherein the appellee agreed to enter the employment of the government of the United States, under the full and complete direction of the chief quartermaster, department of Alaska, for such time as might be required for the completion of the work in contemplation, and to receive therefor the

sum of $5 per working day, and transportation to and from the point of engagement. The agreement is as follows:

"This agreement, made this 6 day of June, A. D. 1900, between the government of the United States, represented by Major Gonzales S. Bingham as chief quartermaster, department of Alaska, as the party of the first part, and Chesley C. Moses of the city of Seattle, county of King and state of Washington, as the party of the second part—

"Witnesseth, that the said Chesley C. Moses, of the city, county, and state as aforesaid, does agree to enter the employment of the government of the United States, under the full and complete direction of the said Gonzales S. Bingham, major and chief quartermaster, department of Alaska, as party of the first part, for such time as may be required for the completion of the work, the party of the second part to receive as compensation for such services as may be required of him and as hereinafter stipulated, the sum of five dollars per working day.

"That the said Gonzales S. Bingham, major and chief quartermaster, department of Alaska, as the party of the first part, further agrees that the said Chesley C. Moses as party of the second part, shall be furnished with the necessary transportation from the point at which he is engaged and these papers are executed to the point at which his services are required, without cost to him as the party of the second part, and when the stipulations of this agreement as hereinafter described are faithfully performed and his term of agreement shall have expired, or in case he becomes physically incapacitated through no fault of his own, the party of the first part further agrees that the party of the second part shall be furnished with return transportation from his post of duty to the point at which his contract of agreement was executed, free of expense to the party of the second part. The party of the second part further agrees that he will at all times cheerfully obey and respect the rules that may be made, and the orders that may be given, by the said Gonzales S. Bingham, major and chief quartermaster, department of Alaska, as the party of the first part, or his official representative, or authorized successor; that all the business of the department of which he may have knowledge will be zealously guarded as confidential and of strictly secret nature; that he will at all times and under all circumstances guard the interests of the government of the United States to the full and complete extent of his ability; that he will not absent himself, during his period of engagement, from his post of duty, except by permission of the said Gonzales S. Bingham, major and chief quartermaster, department of Alaska, or his official representative, or. his lawful successor, or is prevented therefrom by sickness or other intervention of Providence.

"It is further agreed that, in consideration of the faithful performance of the terms of this agreement, the party of the second part is granted the privilege of purchasing such of the quartermaster's and commissary supplies of the government of the United States for his own actual needs at the post at which he is assigned to duty, under such limitations as may be made by the department commander, at a cost not to exceed an advance of ten per centum over and above the cost to the United States government, to cover transportation; that quarters, as soon as available, will be furnished without expense to the said Chesley C. Moses, party of the second part.

"In case that the said Chesley C. Moses, party of the second part, is not, at the time of the execution of this agreement, on the classified and eligible list of the civil service commission, it is further agreed by the said Gonzales S. Bingham, major, and chief quartermaster, department of Alaska, party of the first part, that the said Chesley C. Moses, party of the second part, if he be a skilled laborer, shall be engaged for a temporary period, at the end of which, if his services have been satisfactory, he shall be privileged to undergo an examination for permanent appointment in the classified civil service, should such examination be provided for by the United States civil service commission, and authorized by proper authority.

"It is further agreed by the party of the second part that the violation of any or all of the stipulations of this agreement, by the party of the second part, shall give the right to the said Gonzales S. Bingham, major, and chief quartermaster, department of Alaska, party of the first part, to withhold all

or any part of the pay or any other emoluments to which the said Chesley C. Moses party of the second part, may be entitled."

It appears that the appellee proceeded from Seattle to Ft. Davis, Alaska, in pursuance of said agreement, and on or about the 1st day of July, 1900, commenced work as a carpenter upon certain buildings under construction for the quartermaster's department at that place, continuing at such work until July 1, 1901; that he worked 10 hours a day during the months of July, August, September, and October, except a few Sundays, when he worked but eight hours; that from November 1st to 21st he worked eight and one-half hours per day, and the remainder of the time but eight hours a day—making a total of 311 working days and nine Sundays. The appellee claims that eight hours constitutes a "working day," under Act Cong. Aug. 1, 1892, c. 352, § 1, 27 Stat. 340 [U. S. Comp. St. 1901, p. 2521], and article 62, par. 812, of the United States army regulations, and asks that he be paid "time and a half" for all time worked in excess of eight hours on week days, and "double time" for Sundays and holidays, according to the custom prevailing at Ft. Davis during the period in question, and in the quartermaster's department of the United States. He also asks for payment of $5 per day for 13 days after the completion of the work, during which the appellee was waiting for government transportation, and for $5 a day for 11 days occupied in making the return voyage to Seattle.

The appellant claims that the appellee is estopped from now urging a claim for compensation for extra services, by reason of the acceptance by him, without protest, of compensation at the rate of $5 per day for each day worked, regardless of the number of hours, and receipting for the same, acquitting and discharging the government of all liability to him; also that the necessity for completing the buildings before winter, in order that the soldiers might be sheltered, constituted an emergency, which is excepted by the army regulations from the eight-hour law.

The court below found as facts: "That by the terms of said contract said petitioner was to perform said services until the completion of said works, or until discharged with the consent of said quartermaster; that said petitioner was to receive the sum of five dollars per each working day; that said contract was silent as to the number of hours which under said agreement should constitute a working day; that the rules and regulations of the army at that time in force provided and provide that eight hours should constitute a day's work in the quartermaster's department, except in cases of emergency; that no emergency is shown to have existed at any time during the existence of said contract, or during the time said petitioner performed services; that said petitioner, pursuant to said contract, went to said Fort Davis, Nome, Alaska, and rendered and performed services as such carpenter until he was discharged with the consent of said quartermaster, and in every way fully performed his part of said contract; that at the time said petitioner ceased to perform said services he received compensation therefor from said quartermaster at the rate of five dollars per day for each and every day he labored, without regard for, or consideration had, of the number of hours each day during which said petitioner labored; that said petitioner occupied two hundred and twenty-one and one-half hours in the performance of services as aforesaid over and in excess of the whole number of hours occupied at the rate of eight hours per day, and that in addition to the time occupied by said petitioner in the performance of services at the rate of eight hours per day he occupied the full aggregate number of two hundred and twenty-one and one-half hours in the rendition of services as aforesaid, for which he has never received any compensation; that said number of two hundred and twenty-one and one-half hours amount to twenty-seven and 68/100 days, at the rate of eight hours per day; that at the rate of five dollars per day, being the contract price, said petitioner was and is entitled to further compensation from said defendant in the sum of one hundred and thirty-eight dollars and forty cents ($138.40); that said sum is due said petitioner, and remains unpaid."

From the foregoing facts the court concluded, as matter of law, that at the time said petitioner had fully performed his said agreement he received compensation from said defendant for his said services at the rate of $5 per

day for each and every day which petitioner performed such services, without regard for or any consideration had of the number of hours which petitioner worked each day; that as a matter of law said contract should be construed to mean that said petitioner undertook to perform said services at the rate of $5 per day consisting of eight hours; that under the rules of the Department of War in force at that time said petitioner was and is entitled to compensation at the rate of $5 per day consisting of eight hours per day, and would be entitled to extra compensation at the rate of $5 per day for all time occupied by petitioner in the rendition and performance of said services over and in excess of eight hours per day; that said petitioner did actually perform services as aforesaid over and in excess of eight hours per day, amounting to $27^{68}/_{100}$ days, which, at the rate of $5 per day, amounts to the sum of $138.40; that said petitioner is not entitled to time and a half nor to double time, as prayed for in his petition herein, nor to any part thereof, nor is he entitled to any wages for the time occupied by him in making his return voyage to Seattle, nor to any other sum claimed by him in his said petition, except only compensation at the rate of $5 per day for said overtime of $27^{68}/_{100}$ days, as above herein set forth.

The judgment of the court was that the appellee do have and recover from the United States the full sum of $138.40. From this judgment and decree both parties have appealed.

Edward J. Banning, Asst. U. S. Atty., Marshall B. Woodworth, U. S. Atty., N. D. Cal., and Jesse A. Frye, U. S. Atty., D. Wash.

Herbert E. Snook and Lyman E. Knapp, for appellee and cross-appellant.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). Act Cong. Aug. 1, 1892, c. 352, § 1, 27 Stat. 340, 2 Supp. Rev. St. p. 62 [U. S. Comp. St. 1901, p. 2521], relating to the limitation of the hours of daily service of laborers and mechanics employed upon the public works of the United States, provides:

"That the service and employment of all laborers and mechanics who are now or may hereafter be employed by the government of the United States, by the District of Columbia, or by any contractor or subcontractor upon any of the public works of the United States or of the said District of Columbia, is hereby limited and restricted to eight hours in any one calendar day, and it shall be unlawful for any officer of the United States government or of the District of Columbia or any such contractor or subcontractor whose duty it shall be to employ, direct, or control the services of such laborers or mechanics, to require or permit any such laborer or mechanic to work more than eight hours in any calendar day, except in case of extraordinary emergency."

By section 161 of the Revised Statutes [U. S. Comp. St. 1901, p. 80] the head of each department is authorized "to prescribe regulations not inconsistent with law for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

The contract under consideration was for work performed under the control and direction of the War Department, and was therefore subject to the regulations of that department. The United States Army Regulations, Series 1901, art. 62, par. 812, provides as follows:

"Eight hours constitute a day's work for all mechanics, and laborers employed by or on behalf of the United States, except in cases of emergency. This rule does not extend to engineers, firemen, seamen, watchmen, team-

sters, and others, the nature of whose employment is peculiar and whose service may be necessary at any time or occasionally at all hours of the day."

Whether the statute is limited in its operation to the United States and the District of Columbia, or whether it extends to the territories, need not be determined in this case. It may be assumed that it extends to the territories, and the right of the appellee to maintain his claim may be considered under either the statute or the regulations, and the result will be the same upon the question presented on this appeal. There can be no doubt that it is the duty of the officers of the government in control of the construction of buildings for the use of the War Department to observe the requirements of the statute and the regulations of that department relating to such work; but it does not follow that a laborer or a mechanic employed by the government on any of the public works of the United States, performing more than eight hours of service in a calendar day, is entitled to be paid for such extra service in the absence of an agreement to that effect. Prior to the passage of the act of August 1, 1892, Congress had provided an eight-hour law by the act of June 25, 1868 (chapter 72, 15 Stat. 77, Rev. St. 3738 [U. S. Comp. St. 1901, p. 2507]). That statute provides that "eight hours shall constitute a day's work for all laborers, workmen, and mechanics who may be employed by or on behalf of the government of the United States."

In United States v. Martin, 94 U. S. 400, 404, 24 L. Ed. 128, the Supreme Court had this statute before it upon a claim made by an employé at the steam heating and gas works of the naval academy at Annapolis for services rendered by him on calendar days in excess of eight hours each day. The court, referring to the statute, said:

"This was a direction by Congress to the officers and agents of the United States, establishing the principle to be observed in the labor of those engaged in its service. It prescribed the length of time which should amount to a day's work, when no special agreement was made upon the subject. * * * The statute does not provide that the employer and the laborer may not agree with each other as to what time shall constitute a day's work. * * * The government officer is not prohibited from knowing these facts, nor from agreeing, when it is proper, that a less number of hours than eight shall be accepted as a day's work. Nor does the statute intend that, where out of door labor in the long days of summer may be offered for twelve hours at a uniform price, the officer may not so contract with a consenting laborer. We regard the statute chiefly as in the nature of a direction from a principal to his agent that eight hours is deemed to be a proper length of time for a day's labor, and that his contracts shall be based upon that theory. It is a matter between the principal and his agent, in which a third party has no interest. The proclamation of the President and the act of May 18, 1872 [chapter 172, § 2, 17 Stat. 134], are in harmony with this view of the statute. * * * In the case before us the claimant continued his work after understanding that eight hours would not be accepted as a day's labor, but that he must work twelve hours, as he had done before. He received his pay of $2.50 a day for the work of twelve hours a day, as a calendar day's work during the period in question, without protest or objection. * * * The claimant's contract was a voluntary and a reasonable one, by which he must now be bound."

The case of Timmonds v. United States, 84 Fed. 933, 28 C. C. A. 570, involved the claim of an employé of the quartermaster's department for compensation for labor performed in excess of eight hours

per day. The employment was at a specified salary per month, and the claim was made under the provisions of section 3738 of the Revised Statutes [U. S. Comp. St. 1901, p. 2507]. In all other respects the case was similar to the case at bar. The Circuit Court of Appeals said in that case:

"It is urged that under this provision any laborer, workman, or mechanic who labors in the service of the United States more than eight hours a day may recover as upon a quantum meruit for the value of the extra time so given to the service, irrespective of the contract of employment. This statutory provision has passed under the scrutiny of the Supreme Court in U. S. v. Martin, 94 U. S. 400 [24 L. Ed. 128]. It was there ruled that the provision in question is in the nature of a direction by the government to its agents, and is not a contract between the government and its servants; that it does not specify what sum shall be paid for the labor of eight hours, nor that the price shall be larger when the hours are more, or smaller when the hours are less; and that, being in the nature of a direction from the government to its agents, it does not constitute a contract to pay its servants for the excess of time employed. In the case before us we take it the allegation that the petitioner was compelled to work for twelve hours a day was not intended to mean involuntary or compulsory service beyond the eight hours a day, but that the work he undertook required that period of service at a stipulated monthly compensation. He was under no compulsion. He could have abandoned his service if it proved distasteful or onerous. Continuing, however, in a service which required twelve hours of time each day at a stated compensation per month, he is not entitled to recover as upon an implied contract for the service in excess of eight hours a day. The act, being construed to be merely a direction to the employing officer of the government, does not furnish grounds of recovery for the supposed excessive service, nor confer any right upon or interest in the servant. It is otherwise with respect to letter carriers, because the act with respect to them expressly provides that they shall be paid for the extra time in proportion to the salary fixed by law (U. S. v. Post, 148 U. S. 124, 13 Sup. Ct. 567 [37 L. Ed. 392]), a provision wanting in the act under consideration."

In 1886 the Secretary of War had before him claims arising in his department for compensation for hours of work in a calendar day in excess of the eight hours designated in the statute. The Secretary referred the questions involved in these claims to Attorney General Garland, and requested his opinion as to whether employés required to work more than eight hours per day were entitled to such extra compensation. The opinion of the Attorney General is reported in 18 Opinions Attorney General, 389. In this opinion the Attorney General refers to the fact that the statute (section 3738, Rev. St. [U. S. Comp. St. 1901, p. 2507]) has been frequently before the department, and has received careful consideration, and almost every question upon which even a fanciful or conjectural doubt could be raised in the interpretation of the statute had been brought to the attention of his predecessors, and answers to the applications for opinions had been singularly full and explicit. He also calls attention to the fact that these questions have been submitted to the Court of Claims and the Supreme Court of the United States, and refers to these decisions as well as those of his own department. He says that from these opinions may be deduced certain propositions which he thinks will meet any case that may have been presented or that may thereafter be presented. Among these propositions the Attorney General states the following, applicable to this case:

"That the act of 1868, Act June 25, 1868, c. 72, 15 Stat. 77 (section 3738, Rev. St. [U. S. Comp. St. 1901, p. 2507]), prescribes the length of time which shall constitute a day's work; but it does not establish any rule by which the compensation for a day's work shall be determined, this being left to be fixed in the ordinary or customary manner, where the law does not otherwise provide.

"That it does not contemplate a reduction of wages simply because of the reduction thereby made in the length of the day's work; but, on the other hand, it does not require that the same wages shall be paid therefor as are received by those who, in similar private employments, work a greater length of time per day. This matter of wages is to be dealt with as pointed out in the preceding paragraph, having due regard to the public interests.

"That it does not forbid the making of contracts for labor fixing a different length of time for the day's work than that prescribed in the law.  *  *  *

"All persons who are employed and paid by the day are included within the act, even though they do not fall within the strict language of 'laborers, workmen, and mechanics.' "

The Attorney General then proceeds to apply these propositions of law to the facts in the case under consideration, and with respect to certain carpenters employed at Ft. Spokane he says:

"Under date of January 23, 1886, Mr. George G. Orr complains to the President that carpenters at Fort Spokane were compelled from September, 1882, until July, 1884, to work more than eight hours per day, and asks that they be paid as for extra time for labor done beyond those hours.  *  *  * If the carpenters at Spokane understood that they were to work nine or ten hours per day or to be discharged, and continued in employment with that understanding, they must be held to the conditions of a contract both voluntary and reasonable, and they cannot now recover as for overtime. Mr. Connolly writes that Major King for three years violated the provisions of this statute in work upon the Tennessee river. But the record transmitted to me shows that the stone cutters and stone masons accepted the employment with a full knowledge of the time of labor required and the compensation. It is altogether a mistake that by some reservation in mind the employé can have a claim against the government for compensation for hours beyond the eight hours designated in the statute, he having accepted the employment with the understanding he is to labor the length of time required."

In McCarthy v. Mayor, etc., of N. Y., 96 N. Y. 1, 48 Am. Rep. 601, the plaintiff was employed by the superintendent of the department of docks as a scowman at $2.50 per day for his services. He continued in such employment from June 27, 1874, to March 4, 1876. The plaintiff testified that during the whole period of his employment he worked ten hours per day, and his action was to recover for two hours extra work rendered upon each day. The statute under which this claim was made reads as follows:

"On and after the passage of this act, eight hours shall constitute a legal day's work for all classes of mechanics, workingmen and laborers, excepting those engaged in farm and domestic labor; but overwork for an extra compensation by agreement between employer and employé is hereby permitted." Section 1, c. 385, p. 919, Laws 1870.

In this statute work in excess of eight hours in each calendar day was distinctly recognized as entitled to extra compensation, provided it was by agreement between employer and employé. No such agreement appeared in the case, but it was contended on behalf of the plaintiff that it was intended that overwork was to be regulated as to pay, in the absence of an express contract, by its reasonable value. The court found the purpose of the act to be to place the control of hours of labor within the discretion of the

employé, giving him the privilege, at his option, to refuse to work beyond the eight hours, or to secure extra compensation for extra work by stipulation in the contract of employment. The court says:

"It was one of the avowed objects of the act in question, by establishing a limitation upon the hours of labor, and referring the control of their time, beyond those hours, to the persons employed, to confer a benefit upon the classes protected, and afford them in the employment of their leisure time an opportunity for physical and intellectual improvement which they had not previously enjoyed; but it did not make labor beyond the statutory time, if performed with their consent, illegal, or require compensation to be made therefor unless it was provided for in the contract of employment. It was no part of the design of the act, and indeed, it would be contrary to its avowed object and intent, to so construe it as to authorize two statutory days' labor to be crowded into one calendar day, or to give the price of two for one calendar day's labor, as that would operate to the manifest social detriment of the classes intended to be benefited. Any construction which should hold out to the laborer extraordinary inducements to prolong his hours of labor, and to shorten those of rest and recreation, would directly conflict with the spirit and meaning of this legislation and the benefits intended to be furnished by it. Its plain and obvious intent was to place the control of the hours of labor within the discretion of the employé, and give him the privilege, at his option, of declining to work beyond the time fixed by the statute, or, if he did so work, to authorize him to secure extra compensation for extra work by stipulating for it in the contract of employment. In the absence of any special provision in such a contract, as to the number of hours constituting a day's labor, the act would be held to apply and fix them at eight hours. Under a contract which does not specify the hours of labor, the employé named therein is lawfully entitled to refuse to labor beyond the statutory time in any calendar day of his employment; but he may lawfully contract to labor beyond that period, and stipulate for extra compensation for the labor rendered in excess of that time. The language of the act does not authorize any inference that it was intended to confer the right upon persons employed to charge for more than one day's labor for the services rendered in any calendar day, but, on the contrary, such an inference is plainly repelled by the express provision authorizing extra compensation for overwork when the agreement provides for it."

In Grisell v. Noel Bros. Flour-Feed Co. (Ind. App.) 36 N. E. 452, the Appellate Court of Indiana had before it a claim upon an implied contract for extra compensation for work in excess of eight hours in each calendar day, under a statute similar to that of New York. The court disposes of the claim in the following language:

"The statute itself permits the parties to contract for the extra time and compensation, and this, we apprehend, they would have the right to do without this provision in the statute. If parties may agree that for a day of eight hours the employé shall receive a stipulated sum, they also have the right to agree that for a day of more than eight hours he shall receive a definite sum. The parties to this action certainly had the right to stipulate that for a day of eight hours the appellant should receive $1, and for a day of eleven hours $1.25, the 25 cents being the compensation for overwork. The fact that the subject of extra compensation was not mentioned would not in the least impair the validity of a contract for $1.25 for every day of eleven hours' work. If the parties could make an express contract of that tenor, the law will uphold an implied agreement to the same effect. The appellant must recover, if at all, either upon an express contract or on an implied one. If one person employs another to perform a single day's work for him at $1.25, and at the end of that day the employer pays the laborer $1.25, and the latter accepts it in payment of the day's work, he cannot afterwards recover an additional sum, albeit he may have worked nine, or ten, or eleven hours instead of eight hours, and notwithstanding the law under examination makes eight hours a legal day's work. The acts and con-

126 F.—5

duct of the parties in the case supposed are such as to raise a conclusive presumption that the amount received by the employé was accepted in full payment of what was due him. The same rule applies when the work is done by the week, or month, or year. There can be no doubt but that in the present case the appellee paid, and the appellant accepted, at the end of each week, the sum of $7.50 in full payment of the work done by him during the previous week. The appellant testified, in effect, that he knew, when he entered upon appellee's employment, the nature and amount of the work that was required of him, as well as the compensation he was to receive therefor. If, however, at the end of the first day, or the first week, he found that the number of hours he was to work was greater than he expected, or that the compensation he was to receive for a day's work was not for eight, but for ten or eleven, hours of such work, and he was not satisfied with such arrangement, he should have demanded more pay, or insisted on a smaller number of hours of work per day, and he should have exacted an agreement to that effect from his employer. If the latter refused to accede to this, the appellant had his option to quit the employment or to continue at the same rates. By continuing in the employer's service under the terms of the employment, he waived any right to claim additional compensation. This question was fully passed upon and determined by this court in the case of Helphenstein v. Hartig, 5 Ind. App. 172, 31 N. E. 845. That decision is still in accord with our views of the law. Under a New York statute of which ours is almost an exact copy the Court of Appeals reached the same conclusion in a case, the facts of which were almost identical with those in the present one. It was there held that 'the intent of the act was to place the number of hours of labor of each day within the control of the employé, giving him the privilege, at his option, to refuse to work beyond the eight hours, or to secure extra compensation for extra work by stipulation in the contract of employment,' and that, 'in the absence of any such stipulation, the language of the act repels any inference of or intent to confer a right upon an employé to charge for more than one day's labor for services rendered in any calendar day, and for such services he may not demand any extra compensation.' McCarthy v. Mayor, 96 N. Y. 1 [48 Am. Rep. 601]. To the same effect, see U. S. v. Martin, 94 U. S. 400 [24 L. Ed. 128]; Schurr v. Savigny (Mich.) 48 N. W. 547; Luske v. Hotchkiss, 37 Conn. 219 [9 Am. Rep. 314]; Brooks v. Cotton, 48 N. H. 50 [2 Am. Rep. 172]. Our attention has not been called to a single authority in support of the contention that, under such a statute as the one relied upon, a laborer who works more than eight hours in twenty-four may recover for extra services, in the absence of a special or implied contract to that effect, and we have not been able to find such an authority."

In Vogt v. City of Milwaukee (Wis.) 74 N. W. 789, a city ordinance provided that eight hours should constitute a full day's work for city employés. An employé worked eight hours daily for the first thirty days of his employment, and thereafter, without protest, worked twelve hours a day, and received the same pay. He claimed extra compensation for this overtime during his employment, contending that the ordinance entered into and became a part of the contract between the parties, and that thereby the city became bound to pay the plaintiff the amount specified per day for each eight hours' service. This is precisely the contention of the appellee in the case at bar, and presents the claim in as favorable a light as possible upon the facts in the case. The Supreme Court of Wisconsin in the case cited held that the plaintiff was estopped from asserting, after his discharge, that he was entitled to recover for extra work over eight hours per day. The court, in declaring this doctrine, said:

"It is true that courts are disinclined to enforce estoppels unless they can be subordinated to principles of equity. But this seems clearly to be a case

where the rule should be invoked. The absence of an express agreement, the failure to make a proper protest, the payment of what seems to be the usual wages for the actual time in service, the acceptance of such payments for a long period of time, are all circumstances that speak loudly against the plaintiff's claim. The law which allows contracting parties, through the medium of an express contract, to fix in advance the value of a service to be rendered, also allows them to fix the value, in cases of implied contract, after the service has been rendered. It may as well be fixed by acts of the parties as by express agreement. Here it seems certainly to have been fixed by acts of the parties, and the plaintiff cannot now be permitted to dodge or escape the legal effect of his conduct."

The act of August 1, 1892, differs from the act of June 25, 1868, and the army regulations in making it a misdemeanor for an officer to require more than eight hours of labor per day except in cases of extraordinary emergency. The army regulations differ from the act of 1868 in providing that labor may be required in excess of eight hours per day in an emergency, and in the further exception that the regulation does not apply to certain laborers and mechanics whose employment is peculiar, and whose service may be necessary at any, or occasionally at all, hours of the day; but these provisions cannot, under any possible construction, be held to provide for compensation for services rendered in excess of eight hours per calendar day. If the petitioner in this case is entitled to be paid for excess of day labor under the act of August 1, 1892 (assuming that that act extends to the territory of Alaska), he is entitled to it by reason of the restriction of labor on public works to eight hours per day, and not because of the penal provisions of the act directed against officers and contractors to prevent such excess of labor being required. If the petitioner was required by the officer in charge of the work to perform more labor each day during a part of his term of employment than the law allowed, then the officer is an offender, unless there was an emergency, as claimed by the government; but that fact does not fix the wages of the petitioner, or establish an agreement, either express or implied, when one did not exist before. That no such agreement existed is clearly established by the petitioner's own testimony. His evidence on this point is as follows:

"Q. How much compensation did you receive from the government? A. We received five dollars a day straight time. * * * Q. How often were you paid for your work? When did you get your first pay? A. The first pay was in July some time. Q. After you got up there? A. Yes, sir. Q. Now, when did you receive the first pay, after you had gone to work up there? Do you remember about when that was? A. It was in the latter part of July some time. Q. Well, then, you learned that you were not being paid for overtime, did you not? A. Yes, sir. Q. Is that the first you knew of it? A. No; that was not the first. Q. When did you first learn that you were not going to get paid for overtime? A. About the first of July—along the first of July. Q. Well, was it before you did the first day's work? A. Oh, no. Q. How long had you been at work? A. We had been at work a few days. Q. Do you know about how many? A. No, I do not; I did not set it down, and I do not remember. Q. Well, after you learned you went right on, did you not? A. Yes, sir. Q. Did you offer any protest, in writing or otherwise? A. No."

We are of the opinion that, upon the agreement entered into by the petitioner with the chief quartermaster, the petitioner is not en-

titled to recover compensation for the labor performed by him in excess of eight hours on each calendar day.

The cross-appeal raises the question whether the appellee is entitled to wages for the time occupied in making the return voyage from Alaska to Seattle. The agreement was that when the stipulations of the agreement had been faithfully performed by the petitioner, and his term of agreement had expired, or in case he should become physically incapacitated through no fault of his own, he should be furnished with return transportation from his post of duty to Seattle, free of expense, but no provision was made for the payment of wages during that time. He was returned to Seattle free of expense, and this was all he was entitled to under the agreement.

The judgment and decree of the court below is reversed, with instructions to enter a judgment in favor of the defendant.