### ROBINS *v.* COUNTY OF WAYNE.

COUNTIES—CORONER'S OFFICE—CONTRACT OF EMPLOYMENT—EXTRA HOURS OF SERVICE.

> Plaintiff, an employee in coroner's office, required by statute to remain open 24 hours a day, who was on 24-hour duty every other day but who understood at the inception of and throughout his employment that the contract of employment covered all the actual work and service rendered to defendant county and acknowledged such contract terms by acceptance of pay checks as payment in full to date for each pay period was not entitled to overtime, legal holidays and annual leave days not taken under county civil service rules establishing basic work week of five 8-hour days exclusive of meal periods, since under the circumstances he has been paid for all the work and services for which he seeks to recover extra compensation (CL 1948, § 52.116).

Appeal from Wayne; FitzGerald (Frank), J. Submitted June 11, 1952. (Docket No. 54, Calendar No. 45,508.) Decided October 6, 1952. Rehearing denied December 9, 1952.

Action by John C. Robins against County of Wayne for unpaid wages. Judgment for defendant. Jewel M. Robins, administrator of the estate of John C. Robins, deceased, substituted as party plaintiff. Plaintiff appeals. Affirmed.

*Thomas L. Thomson,* for plaintiff.

*Gerald K. O'Brien,* Prosecuting Attorney, *Hobart Taylor, Jr.,* and *Benjamin C. Stanczyk,* Assistant Prosecuting Attorneys, for defendant.

REFERENCES FOR POINTS IN HEADNOTES
35 Am Jur, Master and Servant § 66; 43 Am Jur, Public Officers § 363; 58 Am Jur, Work and Labor § 34.

REID, J. This is an appeal by plaintiff from a judgment of the circuit court in favor of defendant and from an order of the circuit court denying a new trial. Plaintiff had appealed to the circuit court from a decision of the board of county auditors for Wayne county denying the claim of plaintiff for wages for overtime, legal holidays and annual leave days not taken, and bonus for sick days not taken.

John C. Robins, the employee, began this suit in his lifetime but died before rendition of the judgment. We will refer to the employee as plaintiff.

Plaintiff claims that on April 7, 1941, under CL 1929, § 1364 et seq. (Stat Ann § 5.961 et seq.) (subsequently amended by PA 1941, No 158 [CL 1948, § 52.111 et seq. (Stat Ann and Stat Ann 1951 Cum Supp § 5.961 et seq.)]), he was by a Wayne county coroner duly appointed as deputy coroner, for an indefinite period and subject to dismissal by the appointing authority. Plaintiff claims that by the cited statutes, each coroner in counties having a population of 250,000 and upwards (which includes Wayne county) was empowered to appoint 1 deputy coroner and 1 investigator. Plaintiff further claims that the board of supervisors of Wayne county refused to appropriate money for 2 investigators and the coroners were obliged to direct that the 2 available deputy coroners work alternate 24-hour shifts, because the statute (CL 1948, § 52.116 [Stat Ann § 5.966]) requires the coroner's office to be open at all times for the transaction of official business.

Plaintiff further claims that about October, 1942, he was appointed (by a Wayne county coroner) as investigator and further, that he continued to work 84 hours a week as investigator from October, 1942, until December 31, 1946; that during this period, the positions of 2 deputy coroners, were left vacant.

Plaintiff further claims that he was on 24-hour duty every other day.

Plaintiff cites from syllabus 2 in *Gadd* v. *City of Detroit,* 142 Mich 683:

"Where a city has by ordinance provided for an 8-hour day and for a minimum wage, it is bound by the contract of its commissioner of public works to pay extra for all time over 8 hours per day put in by one of his employes."

However, plaintiff does not plead the cited ordinance referred to in such opinion.

Plaintiff put in evidence as exhibit No 5, Rule 14, Syllabus A, civil service rules and regulations (of the county of Wayne), which is in part as follows:

"The regular work week for the county employees shall be 40 hours of actual work excluding all meal periods formed in any five 8-hour days from Monday through Sunday.    *    *    *

"Subdivision A.    Compensation for work performed in excess of 8 hours in any one day, excluding all meal periods, for the sixth day worked in any week period in excess of 40 hours shall be at the rate of time and one-half of the regular rate."

Section 5 (d) of the salary schedule and salary plan of Wayne county adopted by the Wayne county board of supervisors [in effect December 1, 1943] provides:

"Whenever the salary schedule shall indicate that the salary rate prescribed is based upon a work week in excess of 40 hours a week, such rate shall be controlling, and the employee shall not receive compensation in excess thereof."

Plaintiff further claims that it is undisputed that he was directed to and did work overtime, holidays, and annual-leave days, and was so directed by the coroner because of the emergency caused by the refusal of the board of supervisors to furnish sufficient help to keep the office of the coroners open at all times in accordance with the requirements of the

statute. Plaintiff gave testimony of the overtime that he claims he worked, and of the holiday and sick and special leave time. Plaintiff claims he is entitled to receive pay in the total amount of $33,984.13.

Plaintiff in nowise disproves the showing made by the defendant that the contract of employment expressly required the performance of the so-called overtime and extra hours and days work, for which plaintiff makes claim. However, plaintiff seems to argue that the provisions of the ordinance referred to in the *Gadd Case, supra,* shall be read into the contract of agreement, under the authority of the *Gadd Case.*

But see *United States* v. *Martin,* 94 US 400 (24 L ed 128).

Defendant differentiates the *Gadd Case* from the instant case as follows:

"In *Gadd* v. *City of Detroit,* 142 Mich 683, there was an ordinance of the city fixing 8 hours as a working day. The commissioner of public works required that plaintiff work longer and expressly promised overtime pay for his efforts. The question was the authority of the commissioner to bind the city, and the case at bar has no similar issue. It is not claimed that the coroners promised special pay to plaintiff in addition to the compensation provided by the budget."

Exhibit No 1 is a communication from the Wayne county coroners to the board of supervisors for the county of Wayne, dated September 14, 1942. It reads, in part:

"Due to the fact that under the amended statute passed by the last legislature the qualifications of deputy coroners as defined by the statute are that the deputy coroners shall be practicing physicians; therefore, after a conference between coroners and the board of auditors it has tentatively agreed that the present medical examiner will be appointed as

deputy, while the 2 deputies will be reclassified as senior criminal examiners. It is further tentatively agreed that both duties and salaries of the aforementioned will not be changed, but the real change will be in their respective titles of physicians."

The board of supervisors of Wayne county (apparently in the latter part of the year 1942) adopted the following:

"Particular reference is made to the request of the coroner's office which was granted by your committee under the terms of PA 1941, No 158, provisions of which became effective January 1, 1943 [January 10, 1942]. Deputy coroners are required to be physicians. The deputy coroners in Wayne county do not qualify under this present statute because of the scarcity of physicians during the present war emergency. The coroners are requested to be given authority, subject to the approval of the board of county auditors, to appoint 2 of the county medical examiners as deputy coroners in order to conform to the requirements of the above referred to statute. The 2 persons now carried in the budget are asked to be classified as investigators. We concur in this request and recommend the proper procedure be referred to, jointly, the board of county auditors, and the prosecuting attorney."

Plaintiff was appointed as investigator in October, 1942.

Plaintiff testified:

"As senior investigator my duty was as investigator only. That consisted of investigating all suicides, homicides, and sudden deaths in the county of Wayne during the 24 hours I was on duty. I personally made investigations of all cases that required an investigation at the scene. I was on 24-hour duty every other day. The other senior investigator that was allowed by the supervisors had the alternate 24-hour shift. It was up to the 2 of us to make these

calls, investigations, and inquiries, and all other duties of a senior investigator. There was no one else to do the work besides the 2 of us. No one else did the work. I made these calls night and day between the hours of 8 a.m. and 8 a.m. That was all over the county of Wayne. If our turn to work was on a holiday we had to work that holiday; also Sundays and Saturdays. We were allowed sick leave on this job as investigators. I took my sick leave a day or 2 now and then, but I never took the full amount. Civil service commission set up a rule where they allowed you 1 day each month, and if you didn't take over a certain number of days, you were allowed a bonus to be added to your annual leave each year."

Defendant claims:

"Claimant did not spend the entire 24 hours of his tour of duty at the coroner's office. He commenced his work at 8 a.m., made field calls during the day, and his office work during the early evening. He frequently went home in the evening between 5 p.m. and 7 p.m., and was able to sleep all night at his home. There was also a bed available at the coroner's office. He was at liberty to leave the office and be available to respond to telephone calls when needed. In the event of a death during his absence from the office, he was called by phone. His tour of duty ended at 8 a.m., and during the next 24 hours claimant's duties were taken over by the other investigator, or deputy coroner as he was denominated prior to the passage of PA 1941, No 158."

Defendant claims plaintiff is precluded from recovery for work in excess of 40 hours per week because:

"(a) His annual salary took into consideration his extended work week.

"(b) There is no showing of a compliance with the ordinance requiring prior approval from the board of county auditors for overtime work.

"(c) The limitation by ordinance of overtime in any 1 year to $1,000."

The trial court found among other things:

"The proofs fairly establish that the coroner's office was required by law to be kept open 24 hours a day, and in order to do this, plaintiff was required to be on call 24 hours a day every other day, and with the shortage of help, this necessitated his working legal holidays, not taking his regular leave days or sick leaves or getting compensatory time therefor. The evidence also discloses that this condition was called to the attention of the board of supervisors by the coroner requesting that they allow him more help, which request was refused. It is also established that plaintiff knew of these conditions when he took the job and accepted his regular pay checks in full payment for his services as covered by each check, and at no time made any specific demand for overtime or holiday work prior to filing the claim here sued upon. In filling out a classification questionnaire for the civil service commission (exhibit 11), on April 30, 1943, which plaintiff signed, and which was approved by his department head, he indicated his daily hours of work were 'from 8 a.m. to 8 a.m., subject to call 24 hours.' He also filled out a civil service form called 'employee questionnaire form' (exhibit 12), in which he again stated his hours of employment as '8 a.m. to 8 a.m.' adding the words, 'subject to call.' In answer to a question as to what overtime work he did, he wrote 'Several hours per week on my day off clearing up work from the day before.' When the board of supervisors adopted its annual budget, appropriation was made for the payment for plaintiff's services based upon these questionnaires. Plaintiff accepted employment on that basis and accepted the salary each year as it was renewed by the board of supervisors, with occasional increases."

Exhibits show appropriations for the year 1944–1945, with provision for claimant's salary at $4,087 per annum with the notation, "Received in excess of the maximum established in the civil service pay plan."

Plaintiff understood at the inception of and throughout his employment that the contract of employment covered all the actual work and service rendered to defendant. Plaintiff acknowledged by accepting his pay checks as payment in full to date for each pay period that such was his understanding and thereby gave defendant to understand that plaintiff so accepted the situation and acknowledged the terms of his contract as employee as to amounts that would from time to time be due him for his work and services.

Plaintiff claims in his brief:

"Even though there is an express contract between parties, there may also be implied contract between them for additional services."

This proposition of the plaintiff has no possible application to the instant case because the express contract covered the very services which plaintiff mistakenly speaks of as "additional," and as we have heretofore noted, plaintiff does not contradict or disprove defendant's showing of the terms of the contract which plainly includes all that plaintiff claims as "additional services."

The contract of employment did not specify a standard of wages for the so-called "regular" 40 hours a week, separate and apart from other services rendered by plaintiff.

The contract of employment was valid, notwithstanding the plaintiff's employment called for more than 40 hours per week.

Plaintiff has been paid for all the work and serv-

ices for which he now claims. There is nothing left for him to found his claim on.

In view of our decision, other questions raised do not require our determination.

We affirm the judgment appealed from. Costs to defendant.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.

The late Chief Justice NORTH did not sit.